**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ALPHA PHI ALPHA FRATERNITY INC., *et al.*, | |
| *Plaintiffs,* | |
| | CIVIL ACTION |
| v. | FILE NO. 1:21-CV-05337-SCJ |
| BRAD RAFFENSPERGER, | |
| *Defendant.* | |
| COAKLEY PENDERGRASS, *et al.*, | |
| *Plaintiffs,* | |
| v. | CIVIL ACTION |
| BRAD RAFFENSPERGER, *et al.*, | FILE NO. 1:21-CV-05339-SCJ |
| *Defendants.* | |
| ANNIE LOIS GRANT, *et al.*, | |
| *Plaintiffs,* | CIVIL ACTION |
| v. | FILE NO. 1:22-CV-00122-SCJ |
| BRAD RAFFENSPERGER, *et al.*, | |
| *Defendants.* | |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# INTRODUCTION

As this Court is aware, of the five pending redistricting cases, *Alpha Phi Alpha*, *Grant*, and *Pendergrass* bring claims solely under Section 2 of the Voting Rights Act. [*Alpha Phi Alpha* Doc. 1, ¶¶ 136-140; *Grant* Doc. 1, ¶¶ 84-98; *Pendergrass* Doc. 1, ¶¶ 75-82]. Plaintiffs did not request a three-judge panel in any of these Section-2-only cases. While *Pendergrass* challenges Georgia's new congressional districts, *Alpha Phi Alpha* and *Grant* challenge the new legislative districts. This Court should dismiss all three of these cases, but at the very least refer them to a three-judge panel.[1]

Each of these three lawsuits shares the same jurisdictional defect: they failed to request a three-judge court for an action involving "the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a) ("Section 2284"). But even if this Court were to find this statute inapplicable to Plaintiffs' claims in one or all of these cases, they still should be dismissed because nothing in Section 2 of the Voting Rights Act ("VRA"), nor any of its subsequent amendments, permits an action to be filed

---

[1] Because the two jurisdictional arguments in this brief are the same for each case (with slightly different issues for congressional districts), Defendants are filing the same brief in all three cases for the convenience of the Court. Defendants anticipate filing separate replies to respond to each response brief from the various plaintiffs.

by private parties. While the U.S. Department of Justice can bring an action, private plaintiffs cannot.

## ARGUMENT AND CITATION OF AUTHORITY

The pertinent legal standards are clear:  Where a motion to dismiss is brought pursuant to Fed. R. Civ. Proc. 12(b)(1), the Court must satisfy itself that it has jurisdiction over the matter. *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 732 n.9 (11th Cir. 1982). And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009). While this Court must assume the veracity of well-pleaded factual allegations, it is not required to accept legal conclusions "couched as [] factual allegation[s]." *Id*. at 678-79. This Court may consider any matters appropriate for judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007). Application of these settled standards requires dismissal.

## I.   Where Section 2284 applies, courts have no discretion and must convene a three-judge panel.

Section 2284 is mandatory: it contains "shall" language, depriving a single-judge federal district court of jurisdiction when an action falls within its

coverage. And although various courts have attempted to expand the meaning of "shall" over the years to include a more permissive posture, "when the word *shall* can reasonably read as mandatory, it ought to be so read." ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 114 (2012) (emphasis original). *See also Shapiro v. McManus,* 577 U.S. 39, 43 (2015) ("[28 U.S.C.] §2284(a) admits of no exception, and the mandatory shall . . . normally creates an obligation impervious to judicial discretion") (internal quotations omitted).

Because cases falling within Section 2284(a) *must* be referred to a three-judge court, the only question for this Court to answer is whether Section 2284(a) applies to the three Section-2-only redistricting cases, which are statutory challenges to statewide legislative and congressional districts under the VRA. Historically, Section 2 challenges to districts have been brought in conjunction with constitutional challenges under the Fourteenth and/or Fifteenth Amendments to the U.S. Constitution. *See, e.g.*, *Thompson v. Kemp*, 309 F. Supp. 3d 1360, 1361 (N.D. Ga. 2018) (three-judge court). As a result, there is little precedent precisely on point to address a solely Section 2 challenge to district maps. Further, in prior redistricting cycles, when these types of challenges were made on an emergency basis under the VRA, it was

almost universally through the preclearance provisions of the VRA, which are no longer applicable to Georgia. *Shelby County v. Holder*, 570 U.S. 529 (2013).

Only recently have plaintiffs started bringing singular statutory challenges to redistricting plans under Section 2 of the VRA. Indeed, this decennial reapportionment cycle marks the first time Section 5 has been entirely unavailable to plaintiffs seeking to overturn district maps. Considering these unique circumstances, a close examination of the text and history of Section 2284 is appropriate to determine its applicability to these cases.

## II. Section 2284 applies to each of the Plaintiffs' actions and their respective complaints must be dismissed on that basis

Each of the statutory redistricting cases involves challenges to the statewide legislative and congressional district apportionments crafted by the Georgia General Assembly following the 2020 Census. These actions require a three-judge court, which each of the Plaintiffs failed to request.

A court's reading of a statute "begins with the statutory text, and ends there as well if the text is unambiguous." *Packard v. Comm'r,* 746 F. 3d 1219, 1222 (11th Cir. 2014) (citing *BedRoc Ltd., LLC v. United States,* 541 U.S. 176, 183 (2004)). The statutory language of Section 2284(a) makes clear that a three-judge panel is required for these cases. It requires a three-judge panel to

be convened "when an action is filed challenging the constitutionality of the apportionment of congressional districts **or the** apportionment of any statewide legislative body" *Id*. (emphasis added). There are two "buckets" to consider—the legislative challenges and the congressional challenges.

A.   **Section 2284(a) is unambiguous and applies to purely statutory challenges to legislative reapportionments.**

Regarding the state legislative district cases *Alpha Phi Alpha* and *Grant*, the text makes clear that a three-judge panel is required. Section 2284 requires a three-judge panel whenever a federal "action is filed challenging… the apportionment of any statewide legislative body." This is because, as written, the prepositive modifier requiring a challenge be "constitutional" in nature before triggering the three-judge panel is interrupted by a determiner, which means the "constitutionality" requirement only applies to challenges to congressional districts. In this case, the determiner is the word "the," following the word "or," in Section 2284(a). *See, e.g.,* SCALIA & GARNER, 148 ("The typical way in which syntax would suggest no carryover modification is that a determiner (*a, the, some*, etc.) will be repeated before the second element…") (emphasis original). Accordingly, the "constitutional" element needed in congressional districting challenges is not required in the context of actions

challenging statewide legislative apportionment. This makes sense not only from a textual perspective, but from a practical perspective as well.

**B.    Even if the statute were ambiguous, federalism concerns and the legislative history surrounding Section 2284 clearly show a need for a three-judge court.**

Congress always walks a delicate constitutional line when it intrudes upon the sovereign right of states to run their own elections, particularly in the context of state legislative redistricting. "Questions regarding the legitimacy of the state legislative apportionment (and particularly its review by the federal courts) are highly sensitive matters, and are regularly recognized as appropriate for resolution by a three-judge district court." *Page v. Bartels,* 248 F. 3d 175, 190 (3d Cir. 2001). Indeed, "in such redistricting challenges, the potential for federal disruption of a state's internal political structure is great, counseling in favor of the establishment of a specialized adjudicatory machinery." *Id.* For this reason, it makes sense that Congress chose a broader standard for state legislative districting challenges. As the Supreme Court has explained, "Congress has determined that three-judge courts are desirable in a number of circumstances involving confrontations between state and federal power or in circumstances involving a potential for substantial interference with government administration." *Allen v. State Bd. of Elections,* 393 U.S. 544, 562 (1969) (applying Section 5 of the VRA). And the

congressional record supports reading Section 2284 to apply to *any* federal challenge statewide apportionment.

In enacting the 1976 amendments to Section 2284(a), which, in relevant part, brought the statute to its present text,

> Congress was concerned less with the source of the law on which an apportionment challenge was based than on the unique importance of apportionment cases generally. The Senate Report, for example, consistently states that "three-judge courts would be retained . . . in any case involving congressional reapportionment or the reapportionment of any statewide legislative body…"

*Page,* 248 F. 3d at 190 (citing S. Rep. No. 94-204 (1976)). The Senate Report goes on to explain that the amendment "preserves three-judge courts for cases involving . . . the reapportionment of a statewide legislative body because it is the judgment of the committee that these issues are of such importance that they ought to be heard by a three-judge court…" S. Rep. No. 94-204 (1976), reprinted in 1976 U.S.C.C.A.N. 1996.

While *Page* did not squarely consider a single statutory claim challenging statewide legislative apportionment, its discussion of the history of Section 2284 is instructive to this case and further bolsters the textualist argument described above.

It is worth noting that a divided Fifth Circuit opinion recently considered and rejected an argument that the "constitutional" challenge modifier in

Section 2284(a) did not extend to a singular Section 2 statutory challenge to a statewide legislative apportionment. *Thomas v. Bryant,* 938 F. 3d 134, 145–147 (5th Cir. 2019). But in doing so, it gave only passing analysis and failed to consider the legislative history and federalism arguments raised by Defendants here. Instead, the court relied largely on dicta from other cases that paid similarly short shrift to the issue. *Id*.

In addressing the textual argument, the court was unconvinced that the determiner inserted by the statute's drafters had any effect on its interpretation. "It makes little sense to say that three judges are required to hear statutory claims challenging state legislative redistricting but not statutory claims challenging congressional redistricting." *Id*. at 146–147.  But in reaching this sweeping conclusion, the court declined to consider the delicate federalism concerns implicated by federal challenges to state legislative districting maps. And it further neglected to consider the legislative history surrounding the statute and the changes brought on by its critical 1976 amendment. Oddly, despite noting that "the series modifier canon is highly sensitive to context," the court spared examination of that context at every available opportunity. *Thomas,* 938 F. 3d at 146-147. Perhaps because of this incomplete analysis, the dissent warned that Section 2284 as applied to statutory challenges to state legislative districts remained "a nettlesome issue

that warrants closer study." *Id.* at 187 (Willett, J., dissenting). That closer study demonstrates that a three-judge court is required in *Alpha Phi Alpha* and *Grant*.

### C.   The unique nature of the Voting Rights Act also counsels in favor of application of Section 2284 to congressional-district challenges.

While the text is clear as to legislative redistricting challenges, the remaining question is whether Section 2284 applies to statutory congressional district challenges like *Pendergrass*. While the modifier "constitutionality" would prevent the application for most statutory challenges to district maps, claims brought under the VRA are unique and warrant appointment of a three-judge court.

Unlike many statutes, the underlying language of Section 2 of Voting Rights Act and the Fifteenth Amendment are essentially identical. *See City of Mobile v. Bolden,* 446 U.S. 55, 61 (1980). As the Supreme Court there pointed out, "it is apparent that the language of § 2 no more than elaborates upon that of the Fifteenth Amendment." *Id.* And though Section 2 of the VRA has since been amended, the thrust of the argument that the VRA remains a direct exercise of the enforcement power of Congress under the Fourteenth and Fifteenth Amendments remains unchanged. *See City of Boerne v. Flores*, 521 U.S. 507, 518 (1997) ("We have also concluded that . . . measures protecting

voting rights are within Congress' power to enforce the Fourteenth and Fifteenth Amendments, despite the burdens those measures placed on the States."); *Lewis v. Governor of Ala.*, 896 F.3d 1282, 1293 (11th Cir. 2018), *vacated and rehearing en banc granted by* 914 F.3d 1291 (11th Cir. Jan. 30, 2019) ("The Voting Rights Act . . . 'is designed to implement the Fifteenth Amendment and, in some respects, the Fourteenth Amendment.'") (Wilson, J.). Thus, more than most congressional actions, the VRA represents a direct effort by Congress to *implement* constitutional provisions in the Fifteenth and Fourteenth Amendments.

Given the unique nature of the VRA in enforcing constitutional provisions, this Court should also consider challenges to congressional districts under the VRA as "constitutional" in nature.

**D.   Failure to seek a three-judge panel violates Section 2284 and the Local Rules, requiring dismissal.[2]**

When a plaintiff files an action that requires a three-judge panel, the Local Rules require a plaintiff to notify the clerk of the need for such an

---

[2] An alternative to outright dismissal of some or all of the cases would be consolidation of all five redistricting actions now pending in the Northern District before the three-judge court. Each of these actions overlap substantially both on the facts and on the law and consolidating them would preclude potentially conflicting outcomes. Moreover, all parties agree that a three-judge court may exercise supplemental jurisdiction over the statutory claims against state legislative districts if such an action also includes

appointment. L.R. 9.1. Given the jurisdictional nature of the requirements of Section 2284, the failure to notify the clerk or the court of such a need requires dismissal. In one admittedly distant—but yet uncontradicted—case considering this very issue, the D.C. Court of Appeals agreed. *Eastern States Petroleum Corp. v. Rogers,* 265 F. 2d 593 (D.C. Cir. 1959). "[A] three-judge court does not exist until it has been created by the Chief Judge of the Circuit," the court began. *Id.* at 597. "Sometimes we say a court has jurisdiction to determine whether it has jurisdiction. Somebody along the line has to determine whether there is jurisdiction in the first sense." *Id.* The initial single district court judge with whom the plaintiff's action was first filed, the court concluded, is the appropriate party to make that determination.

## III.   The Complaints should be dismissed because there is no private right of action conferred by Section 2 of the VRA.

Even if the cases are properly before a single-judge court, they should still be dismissed. The Supreme Court has often "[a]ssum[ed], for present purposes, that there exists a private right of action to enforce" Section 2, but it has never directly answered that question. *See City of Mobile v. Bolden*, 446

---

constitutional claims. Also, because decisions by three-judge courts are appealed directly to the Supreme Court, consolidating has the added benefit of preventing these interconnected cases from proceeding on different appellate paths.

U.S. 55, 60 (1980) (plurality). As a result, the question of whether "the Voting Rights Act furnishes an implied cause of action under § 2" remains "open.*" Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021) (Gorsuch, J., concurring).

Congress has not clearly expressed its intent to provide a right of action under Section 2, and thus, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001). "Moreover, a reviewing court may not plumb a statute's supposed purposes and policies in search of the requisite intent to create a cause of action; rather, the inquiry both begins and ends with a careful examination of the statute's language." *In re Wild*, 994 F.3d 1244, 1255 (11th Cir. 2021) (en banc). The default view is that no private right of action exists—Congress must "intend[] to provide one" for such a right to exist. *Id*. at 1259; *accord Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019) (applied to Help America Vote Act).

Nothing in the text of Section 2 "clearly and affirmatively manifest[s] its intent—as reflected in the Act's text and structure—to create a private right of action." *Id*. at 1256. In fact, one cannot find any "'rights-creating' language" in Section 2. *Sandoval*, 532 U.S. at 288. Merely referring to the right to vote

generally is not a clear intent to create a private right of action, and thus cannot create that kind of right "in [the] clear and unambiguous terms" that precedent requires. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002).

Congress specifically created private rights of action in other parts of the Voting Rights Act but failed to do so in Section 2. For example, Section 3 includes language authorizing proceedings to be "instituted by the Attorney General *or an aggrieved person* under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10302 (emphasis added). There is no reference in Section 2 to any "aggrieved person" being permitted to bring an action under its provisions—and the fact that the adjoining section contains such a clear statement of congressional intent "very nearly forecloses" the idea that Section 2 could contain a private right of action. *In re Wild,* 994 F.3d at 1259.

Because Section 2's text does not "clearly and affirmatively manifest" a private cause of action, none exists. *Id*. at 1256. Thus, in addition to the dismissal for failing to notice a three-judge court, Plaintiffs' cases should also be dismissed because they have no ability to bring this action as private citizens.

**IV.    This Court should authorize an immediate appeal if it rules against Defendants on the issues contained in this motion.**

If this Court disagrees with Defendants and finds this action can proceed before a single judge, it should certify its order for immediate appeal[3] under 28 U.S.C. § 1292(b). That statute specifies that "[w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." *Id.*

All of the required elements of 28 U.S.C. § 1292(b) are satisfied here. First, whether this Court has jurisdiction to proceed as a single court and whether a private right of action exists under Section 2 are absolutely "controlling question[s] of law." *Id.* Neither require any factual determinations and are only "pure, controlling question[s] of law" that go directly to the Court's jurisdiction. *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004).

---

[3] While the statute has been amended, it appears that any appeal from an order denying a three-judge court is reviewable by the Eleventh Circuit, not the Supreme Court. *See Wilson v. Port Lavaca*, 391 U.S. 352 (1968).

Second, this Court cannot deny that Defendants' view of the law on these two points are in areas where a "substantial ground for difference of opinion" exists. 28 U.S.C. § 1292(b); *see also Thomas*, 938 F.3d at 187 (Willett, J., dissenting). Given the novelty of both questions and lack of appellate direction, this Court cannot answer whether the Eleventh Circuit is "in complete and unequivocal agreement with the district court." *McFarlin*, 381 F.3d at 1258 (cleaned up). This meets the second requirement of § 1292(b).

Third, an immediate appeal would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If the Court is incorrect about either of these questions, the amount of judicial resources wasted would be extensive, to say nothing of the potential confusion to voters from possibly conflicting orders about the proper district boundaries for the state. As a result, the "resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259. Here, if Defendants are correct on the two points in this brief, either the case must proceed in front of three judges and/or the entire complaint should be dismissed, which obviously would "substantially shorten the litigation." *Id.*

Because all of the requirements for an immediate appeal are met, if this Court disagrees with Defendants on these two issues, it should certify the issues for consideration by the Eleventh Circuit.

## CONCLUSION

Plaintiffs' claims in all three cases fail to get past the starting gate. This Court cannot hear any of the cases by itself—or at the very least cannot hear the state legislative claims by itself—and should dismiss the case or require the appointment of a three-judge court. But the complaints in all three cases should also be dismissed because there is no private right of action under Section 2 of the VRA. If the Attorney General wishes to sue the State of Georgia, as he has shown he is willing to do, he can proceed under Section 2. But these plaintiffs cannot.

Because these are controlling jurisdictional issues, this Court should certify any denial of this motion for immediate review by the Eleventh Circuit.

This 14th day of January, 2022.

Respectfully submitted,

Christopher M. Carr
Attorney General
Georgia Bar No. 112505
Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280
Charlene McGowan
Assistant Attorney General
Georgia Bar No. 697316
**State Law Department**

40 Capitol Square, S.W.
Atlanta, Georgia 30334

*/s/ Bryan P. Tyson*
Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@taylorenglish.com
Frank B. Strickland
Georgia Bar No. 678600
fstrickland@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, Georgia 30339
(678) 336-7249

*Counsel for Defendants*

18

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(D), the undersigned certifies that the foregoing Brief has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Bryan P. Tyson*
Bryan P. Tyson