# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF GEORGIA

## ATLANTA DIVISION

| | |
|---|---|
| ALPHA PHI ALPHA FRATERNITY INC., *et al.,*<br><br>       *Plaintiffs*,<br><br>vs.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia.<br><br>       *Defendant*. | **Case No. 1:21-cv-05337-SCJ** |

## <u>PLAINTIFFS' RESPONSE IN OPPOSITION TO STATE DEFENDANT'S MOTION TO DISMISS</u>

## <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ................................................................................1

BACKGROUND ................................................................................3

LEGAL STANDARD...........................................................................3

ARGUMENT ....................................................................................4

I.  SECTION 2284 DOES NOT REQUIRE ALPHA PLAINTIFFS'
    ACTION TO BE HEARD BY A THREE-JUDGE PANEL .........................4

    A.  The State's Interpretation of Section 2284 is Contrary to the Text
        ...........................................................................................4

    B.  Courts Have Uniformly Rejected the State's Interpretation of
        Section 2284 ......................................................................9

    C.  The State's Interpretation of Section 2284 is Contrary to the
        History of the Statute..........................................................11

    D.  Policy Concerns Counsel Against the State's Reading of
        § 2284(a)...........................................................................13

II.  SECTION 2 OF THE VOTING RIGHTS ACT MAY BE ENFORCED
     THROUGH A PRIVATE RIGHT OF ACTION .........................................15

III.  THIS COURT SHOULD DENY THE STATE'S REQUEST FOR AN
      INTERLOCUTORY APPEAL....................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama State Conference of N.A.A.C.P. v. Alabama*,
  949 F.3d 647 (11th Cir. 2020), *rev'd as moot by* 141 S. Ct. 2618 (2021) .........16

*Bischoff v. Osceola County*,
  222 F.3d 874 (11th Cir. 2000) ..............................................................................3

*Bone Shirt v. Hazeltine*,
  336 F. Supp. 2d 976 (D.S.D. 2004) ...................................................................10

*Chestnut v. Merrill*,
  356 F. Supp. 3d 1351 (N.D. Ala. 2019)..............................................................10

*Director, Office of Workers' Compensation Programs v. Rasmussen*,
  440 U.S. 29 (1979)...............................................................................................13

*Dodd v. United States*,
  545 U.S. 353 (2005)..............................................................................................13

*Duncan v. Walker*,
  533 U.S. 167 (2001)................................................................................................4

*Emery v. Hunt*,
  272 F.3d 1042 (8th Cir. 2001) ............................................................................11

*Facebook, Inc. v. Duguid*,
  141 S. Ct. 1163 (2021).......................................................................................5, 7

*Ford v. Strange*,
  580 F. App'x 701 (11th Cir. 2014) (per curiam)................................................16

*Puerto Rico v. Franklin California Tax-Free Trust*,
  579 U.S. 115 (2016)..............................................................................................13

*Harris v. Arizona Independent Redistricting Commission*,
  578 U.S. 253 (2016)..............................................................................................11

*Johnson v. Ardoin*,
    No. 18-625-SDD-EWD, 2019 WL 2329319 (M.D. La. May 31, 2019) ............10

*Jordan v. Maxim Healthcare Services, Inc.*,
    950 F.3d 724 (10th Cir. 2020) .................................................................................9

*Kalson v. Paterson*,
    542 F.3d 281 (2d Cir. 2008) ..................................................................................12

*Kimel v. Florida Board of Regents*,
    528 U.S. 62 (2000)..................................................................................................14

*McFarlin v. Conseco Services, LLC*,
    381 F.3d 1251 (11th Cir. 2004) ............................................................................18

*Middleton v. Wells Fargo Bank, N.A.*,
    474 F. Supp. 3d 1290 (N.D. Ga. 2020)....................................................................4

*Mixon v. Ohio*,
    193 F.3d 389 (6th Cir. 1999) ................................................................................16

*Morse v. Republican Party of Virginia*,
    517 U.S. 186 (1996)................................................................................................15

*N.A.A.C.P., Inc. v. South Carolina Democratic Party*,
    898 F.2d 146 (4th Cir. 1990) ................................................................................11

*OCA-Greater Houston v. Texas*,
    867 F.3d 604 (5th Cir. 2017) ................................................................................16

*Old Person v. Brown*,
    182 F. Supp. 2d 1002 (D. Mont.), *aff'd*, 312 F.3d 1036 (9th Cir. 2002)............10

*Old Person v. Cooney*,
    230 F.3d 1113 (9th Cir. 2000) ..............................................................................11

*Page v. Bartels*,
    248 F.3d 175 (3d Cir. 2001) ..................................................................................12

*Rural West Tennessee African-American Affairs Council v. Sundquist*,
    209 F.3d 835 (6th Cir. 2000) ................................................................................10

iii

*Spain v. Brown & Williamson Tobacco Corp.*,
    363 F.3d 1183 (11th Cir. 2004) ............................................................3

*Thomas v. Reeves*,
    961 F.3d 800 (5th Cir. 2020) (en banc) (per curiam) ......................10, 12, 13, 15

*United States v. Zak*,
    No. 1:18-cv-5774-AT, 2021 WL 5736218 (N.D. Ga. Oct. 22, 2021).........18, 19

*United States ex rel Powell v. American InterContinental University, Inc.*,
    756 F. Supp. 2d 1374 (N.D. Ga. 2010).................................................19

**Statutes**

28 U.S.C.
    § 1253...................................................................................15
    § 1292(b)............................................................................18, 20
    § 2284.............................................................................*passim*
    § 2284(a) .........................................................................*passim*

52 U.S.C.
    § 10302(a) ............................................................................17
    § 10302(b) ............................................................................17
    § 10302(c) ............................................................................17

Bipartisan Campaign Reform Act, 116 Stat. 81 .......................................5

**Other Authorities**

17A Charles Alan Wright et al., Federal Practice and Procedure (2007)...............11

22 James W. Moore, et al., Moore's Federal Practice (3d ed. 2019) .....................11

Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of
    Legal Texts* (2012) ............................................................5, 8

David P. Currie, *The Three-Judge District Court in Constitutional
    Litigation*, 32 U. Chi. L. Rev. 1 (1964) ...........................................12

*Oxford English Dictionary*,
   https://www.oed.com/view/Entry/51248?rskey=tZSDCT&result=1
   #eid7059288 ..................................................................................................8

*S.* Rep. No. 97-417 (1982) ..........................................................................15

# **INTRODUCTION**

The State asks this Court to dismiss this suit by Alpha Phi Alpha, Sixth District of the African Methodist Episcopal Church, and individual voters (the "Alpha Plaintiffs") based on arguments that no court has ever accepted. The State claims that 28 U.S.C. § 2284 *mandates* a three-judge court for all—including non-constitutional—challenges to the reapportionment of statewide legislative bodies and that § 2 of the Voting Rights Act ("VRA") may not be enforced through a private right of action. This Court should reject each of the State's erroneous assertions.

*First*, Section 2284 does not require a three-judge court in actions involving purely non-constitutional claims—like the Alpha Plaintiffs' action here. The statute provides in relevant part that such special-purpose courts "shall be convened ... when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284. By the statute's express terms, then, a three-judge court is convened only for constitutional apportionment challenges, and every case considering the statute's interpretation, leading treatises on the interpretation of the statute, and the

1

statute's history all confirm that plain-language reading.[1]    The State's contrary assertion, that a duplicative "the" in the statute requires the dismissal of this action and the expansion of the narrow three-judge panel provision to actions with only non-constitutional claims, is meritless and would require this Court to adopt an unnatural reading of § 2284(a) that is contrary to the history of the provision.

*Second*, the text of the VRA and every case interpreting the relevant provisions of the VRA, including binding Supreme Court precedent, agree that § 2 may be enforced through a private right of action. The State again offers no legal support for its contrary argument. Instead, it asks this Court to ignore any part of the VRA other than § 2—instead of reading the VRA as a whole—and to look past the Supreme Court's endorsement of a private right of action for § 2 cases and the many § 2 cases the Supreme Court has decided that were brought by private citizens. This Court should reject the State's baseless arguments and deny its motion to dismiss.

*Third*, the State asks this Court to authorize an immediate, interlocutory appeal. No such authorization is warranted. There is no substantial ground for a difference of opinion on either of the state's arguments in the instant motion, as not

---

[1] Indeed, it is the Alpha Plaintiffs' position that a three-judge court lacks jurisdiction to hear actions asserting purely statutory claims. This Court need not decide that issue to deny the State's motion to dismiss.

a single court has ever adopted either of the State's fringe views. Additionally, there is no need for an interlocutory appeal here. Because this case is in a preliminary injunction posture, the State will have a chance to raise any legal arguments for dismissal on an interlocutory appeal if the Court grants the pending motion for a preliminary injunction. The meritless arguments presented here by the State do not justify their own separate interlocutory appeal.

## **BACKGROUND**

On December 30, 2021, Alpha Plaintiffs brought this action alleging that the State enacted state legislative maps that violate Section 2 of the Voting Rights Act.[2] *See Alpha Phi Alpha Fraternity, Inc. v. Raffensperger*, No. 1:21-cv-05337-SCJ, ECF 1 ("Compl."). The Complaint does not allege any constitutional claims or otherwise raise constitutional issues, and so Alpha Plaintiffs' case was assigned to be heard before this Honorable single-judge District Court. The State moved to dismiss the Complaint on January 14, 2022. *See* Def.'s Mem. Law in Support of Mot. to Dismiss, ECF 43 ("Mot.").

---

[2] Alpha Plaintiffs recite here only those facts that are necessary to the resolution of the jurisdictional questions raised by the State's Motion to Dismiss.

3

## LEGAL STANDARD

On a motion to dismiss, the Court must "take the facts from the allegations in the complaint, assuming those allegations to be true." *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1186 (11th Cir. 2004); *see also Bischoff v. Osceola Cnty.*, 222 F.3d 874, 878 (11th Cir. 2000) (applying this standard in the Rule 12(b)(1) context to facial jurisdictional challenges). Dismissal under Rule 12 may be granted if the plaintiffs are precluded from obtaining relief as a matter of law. *See Middleton v. Wells Fargo Bank, N.A.*, 474 F. Supp. 3d 1290, 1293 (N.D. Ga. 2020).

## ARGUMENT

### I.    SECTION 2284 DOES NOT REQUIRE ALPHA PLAINTIFFS' ACTION TO BE HEARD BY A THREE-JUDGE PANEL

Section 2284 provides that "[a] district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a). Since this language was enacted by Congress in 1976, it has been uniformly understood to require a three-judge panel only when expressly required by statute, or when an action challenges the constitutionality of congressional or state legislative apportionment. A plain reading of the statutory text, every judicial decision deciding

4

the issue presented here, and the history of the provision all confirm this interpretation. The State's argument to the contrary is meritless.

## A.    The State's Interpretation of Section 2284 is Contrary to the Text

In a statutory interpretation case, the Court's task is "to construe what Congress has enacted," a task which begins with the text, and ends there where the text is unambiguous. *See, e.g.*, *Duncan v. Walker*, 533 U.S. 167, 172 (2001).

That is the case here. The plain text of Section 2284(a) unambiguously defines three, and only three, categories of cases for which a three-judge court must be convened: (1) "when otherwise required by Act of Congress," which includes (for example) actions brought under statutes like the Bipartisan Campaign Reform Act, BCRA § 403(a)(1), 116 Stat. 81, but not Section 2 of the Voting Rights Act; (2) "when an action is filed challenging the constitutionality of the apportionment of congressional districts," which does not include this action that neither brings a constitutional challenge nor challenges the apportionment of congressional districts; or (3) "when an action is filed challenging the constitutionality of . . . the apportionment of any statewide legislative body," which does not include this action because it does not challenge the constitutionality of the apportionment of Georgia's General Assembly seats, and instead challenges that apportionment only on statutory grounds. As a matter of plain English, the statutory phrase "the constitutionality of"

5

modifies both "the apportionment of congressional districts" and "the apportionment of any statewide legislative body."

Formal textual analysis makes this point clear. A prepositive modifier generally applies to all items in a parallel series. *See* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* at 147 (2012) ("When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive modifier normally applies to the entire series."); *see also Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1169 (2021) ("The Court often applies this interpretative rule, usually referred to as the 'series-qualifier canon.' . . . This canon generally reflects the most natural reading of a sentence."). Section 2284(a) contains a "straightforward, parallel construction" that easily confirms that three-judge courts are mandated only for *constitutional* challenges to state legislative apportionment. The illustration below demonstrates this straightforward analysis.

| "A district court of three judges shall be convened" | | |
|---|---|---|
| | (1) "*when* otherwise required by Act of Congress, or" | |
| | (2) "*when* an action is filed challenging the constitutionality of" | |
| | | (a) "*the apportionment of* congressional districts or" |
| | | (b) "*the apportionment of* any statewide legislative body." |

As shown in the illustration above, Congress made its meaning clear through the textual use of parallel structure. In particular, Section 2284(a) contains two parallel series. The first series is separated by a comma, joined by a connector ("or"), and made parallel by the repetition of the word "when." Everything that precedes the first "when" clause applies equally to both "when" clauses-- i.e., a district court of three judges shall be convened when otherwise required by Act of Congress and a district court of three judges shall be convened when an action is filed challenging the constitutionality of apportionment. The second series is nested within the second part of the first series. This series is joined by a connector ("or") and is made parallel

by the repetition of the phrase "the apportionment of." Just as with the "when" clauses in the first series, everything that precedes the first "the apportionment of" clause applies equally to both "the apportionment of" clauses, i.e., a three-judge court must be convened when an action challenges the constitutionality of either the apportionment of congressional districts or the apportionment of any statewide legislative body.

The State claims that § 2284 should be read such that the "constitutionality of" modifier does not apply to the second "the apportionment of" clause. *See* Mot. 6-7. That reading of the statute has at least three textual flaws.

*First*, to accept the State's reading, this Court would have to reject the more natural parallel reading of the statute. Instead of the second series being made parallel by the repetition of dual "the apportionment of" clauses (just like the parallel use of "when" in the first series), the State's reading creates an unparallel series where one phrase begins with "the constitutionality of" and the other begins with "the apportionment of." There is no reason to accept this unparallel and unnatural reading of the sentence when a more natural parallel reading exists. *See Facebook, Inc.*, 141 S. Ct. at 1169.

*Second*, the State invites this Court to rely on an exception to the primary rule of the series-qualifier canon. *See* Mot. 6. That is misplaced because the primary rule

easily applies here, *see supra* at 6, and because the relevant statutory text does not even include a determiner performing the function that is required by the exception. Namely, the State argues that the article "the," which precedes the repetition of "apportionment of" in the second series is a "determiner" that interrupts the series in Section 2284 in a manner that limits the constitutional modifier to only challenges to congressional districts. *See* Mot. 6 (citing Reading Law at 148). This claim is wrong because the article "the" upon which the State places the entire weight of its statutory interpretation is not functioning as a determiner that interrupts the phrase.[3] Notably, none of the Scalia and Gardner examples demonstrating the State's relied upon exception involve phrases where the words immediately following the determiner are the exact same as those in the first element. *Compare* Scalia & Gardner at 148-149 (providing the following examples of a determiner interrupting a phrase in a manner that conveys no carryover modification: "The charitable institutions or the societies," "A solid wall or a fence," etc.), *with* 28 U.S.C. § 2284(a) (" . . . the apportionment of congressional districts or the apportionment

---

[3] Determiners usually help readers to determine which particular thing, out of a number of potential options, a writer is referring to, i.e., *the* White House as opposed to *a* white house. *Oxford English Dictionary*, https://www.oed.com/view/Entry/51248?rskey=tZSDCT&result=1#eid7059288 (A determiner is "[a] class of limiting expressions [that] modify[] nouns." And determiners "normally precede adjectival modifiers.").

of any statewide legislative body."). This is so because unlike the determiners in the Scalia and Garner examples, the "the" at issue here is not intended to interrupt the phrase, but instead—as explained *supra* at 7-8—merely emphasizes the parallel structure of the sentence.

*Third*, even if "the" was performing the function the State suggests in § 2284(a), the exception to the series-qualifier canon is not a hard and fast rule, but rather a suggestion regarding "[t]he typical way in which syntax would suggest no carryover modification."  Scalia & Gardner at 150. Indeed, as Scalia and Garner are careful to note, the series-qualifier canon is the canon most susceptible to context. *Id.*; *see also Jordan v. Maxim Healthcare Servs., Inc.*, 950 F.3d 724, 745 (10th Cir. 2020) ("[T]he series-qualifier canon, 'perhaps more than most [canons] . . . [,] is subject to defeasance by other canons'—that is, it is perhaps more prone than most to have its effect nullified by other canons. At bottom, 'like all canons of construction, [the series-qualifier canon] is merely an interpretive aid, not an absolute rule.' Its utility depends on 'context and consideration of other, and often conflicting, interpretive aids.'") (quoting *Benefield v. Colo. Republican Party*, 329 P.3d 262, 267 (Colo. 2014)) (internal citations omitted). As explained *infra* at 13-15, even if the text itself did not clearly preclude the State's position (and it does), § 2284(a)'s context also does not favor the State's interpretation.

10

**B.     Courts Have Uniformly Rejected the State's Interpretation of Section 2284**

Nor has any court ever adopted the State's atextual reading. Instead, courts have uniformly accepted that § 2284(a) mandates a three-judge court only when an action brings a constitutional challenge to the apportionment of a statewide legislative body. *See, e.g.*, *Rural W. Tenn. African-Am. Affs. Council v. Sundquist*, 209 F.3d 835, 838 (6th Cir. 2000) (noting that the underlying case initially alleged both Section 2 and constitutional violations, but "[b]ecause the amended complaint contained no constitutional claims, the three-judge court disbanded"); *Chestnut v. Merrill*, 356 F. Supp. 3d 1351,1357 (N.D. Ala. 2019) ("Neither the court nor Defendant could find any purely Section 2 cases heard by a three-judge panel."); *see also Thomas v. Reeves*, 961 F.3d 800, 801 (5th Cir. 2020) (en banc) (per curiam) (Costa, J., concurring ) ("The three-judge district court statute traces back more than a century. In its long history, no court has applied the statute unless confronted with a challenge to a law's constitutionality."); *Bone Shirt v. Hazeltine*, 336 F. Supp. 2d 976, 980 (D.S.D. 2004); *Old Person v. Brown*, 182 F. Supp. 2d 1002, 1003 (D. Mont.), *aff'd*, 312 F.3d 1036 (9th Cir. 2002); *Johnson v. Ardoin*, No. 18-625-SDD-EWD, 2019 WL 2329319, at *3 (M.D. La. May 31, 2019) ("Considering that 'congressional enactments providing for the convening of three-judge courts must be strictly construed,' … this Court finds that the three-judge statute applies only

11

when the constitutionality of apportionment is being challenged.") (quoting *Thomas*, 919 F.3d at 309).

Indeed, the Supreme Court has also acknowledged § 2284's limitation to constitutional challenges. *See Harris v. Ariz. Indep. Redistricting Comm'n*, 578 U.S. 253, 257 (2016) (noting in a parenthetical that § 2284(a) "provid[es] for the convention of [a three-judge] court whenever an action is filed challenging the *constitutionality* of apportionment of legislative districts" (emphasis added)).

Leading treatises on federal jurisprudence are in accord. *See, e.g.*, 22 James W. Moore, et al., Moore's Federal Practice § 404.03[2], at 404-30 to -31 (3d ed. 2019) (Section 2284(a) "is limited to federal constitutional claims"); 17A Charles Alan Wright et al., Federal Practice and Procedure § 4235, at 202 (3d ed. 2007) (explaining that § 2284(a) should apply to "all federal constitutional challenges that could result in a reapportionment"). And the courts of appeal have repeatedly affirmed single-judge Section 2 determinations in cases involving state legislative redistricting. *See, e.g.*, *N.A.A.C.P., Inc. v. South Carolina Democratic Party*, 898 F.2d 146 (4th Cir. 1990); *Old Person v. Cooney*, 230 F.3d 1113, 1117 (9th Cir. 2000); *Emery v. Hunt*, 272 F.3d 1042, 1045 (8th Cir. 2001).

In short, the overwhelming weight of authority rejects the State's novel interpretation of § 2284(a) and this Court should do so as well.

12

**C.    The State's Interpretation of Section 2284 is Contrary to the History of the Statute**

The history of § 2284 also disfavors the State's interpretation.    The statutory predecessor to § 2284 was originally enacted in the wake of the Supreme Court's decision in *Ex Parte Young*, which permitted suit against state officials for *constitutional* violations. *See* David P. Currie, *The Three-Judge District Court in Constitutional Litigation*, 32 U. Chi. L. Rev. 1, 6-7 (1964). Prior to the amendment of the three-judge court provision in 1976, "the Three Judge Court Act mandated that a three-judge court be convened to hear any action in which plaintiffs sought to enjoin the enforcement of a state statute on *constitutional* grounds." *Page v. Bartels*, 248 F.3d 175, 188 (3d Cir. 2001) (emphasis added). With the 1976 amendment, which produced § 2284(a) as it exists today, "Congress scrapped most of the three-judge district court regime because it was burdening the Supreme Court as well as lower courts and had resulted in procedural complexities." *Thomas*, 961 F.3d at 808 (citing 17A Wright et al., *supra*, § 4234 and *Kalson v. Paterson*, 542 F.3d 281, 287 (2d Cir. 2008)). That is to say, "Congress was . . . narrowing the reach of the three-judge statute when it added the current language." *Id.* Because the pre-1976 three-judge statute was limited to constitutional challenges, it is implausible that Congress, while narrowing the reach of the three-judge statute, actually expanded the statute to cover non-constitutional claims for the very first time.

13

Furthermore, non-constitutional, statutory-based challenges to state legislative apportionments were not common practice when Congress amended the three-judge statute in 1976. *See Thomas*, 961 F.3d at 809 ("[T]here was no practice of statutory challenges to state legislative apportionment that Congress needed to address in 1976."). Accordingly, Congress could not have intended to bring under the purview of the three-judge court statute a category of cases that did not exist at the time the amendment was enacted. This latter point also explains why the State's reliance on the legislative history reports is of little assistance. It is not surprising that committee reports reflect that the drafting committees believed that amended § 2284 would cover all challenges to reapportionment of statewide legislative bodies. For the reasons explained above, all such challenges at the time of the statute's amendment were constitutional challenges and the committees' view was accordingly accurate. The post-amendment practice of bringing statutory challenges to the reapportionment of statewide legislative bodies does not give courts license to re-write the statute on Congress's behalf. *See, e.g.*, *Dir., Office of Workers' Comp. Programs v. Rasmussen*, 440 U.S. 29, 47 (1979) ("Congress has put down its pen, and we can neither rewrite Congress' words nor call it back 'to cancel half a Line.'"); *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 130 (2016) ("[O]ur constitutional structure does not permit this Court to 'rewrite the statute that

14

Congress has enacted.'") (quoting *Dodd v. United States*, 545 U.S. 353, 359 (2005)). Rather, it is up to Congress to decide whether it wishes to expand the reach of the statute in light of this newer practice.

### D.    Policy Concerns Counsel Against the State's Reading of § 2284(a)

Lacking textual, precedential, or historical support, the State claims that this Court should nonetheless adopt its novel reading of § 2284(a) because of federalism concerns. Mot. 7-10. While somewhat amorphous, the State's argument appears to be that since three-judge courts handle some sensitive matters involving the balance of state and federal power, § 2284(a) should be read to require the convening of three-judge courts in other cases that also raise those issues. That argument fails.

*First*, even if they were substantiated, federalism concerns cannot overcome the plain-text reading of the statute, which does not favor the State's reading. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 96 (2000) (Stevens, J. concurring) ("Federalism concerns do make it appropriate for Congress to speak clearly when it regulates state action. But when it does so, as it has in these cases, we can safely presume that the burdens the statute imposes on the sovereignty of the several States were taken into account during the deliberative process leading to the enactment of the measure.").

*Second*, the State's reading would create its own federalism problems. It would mandate three-judge courts for all state redistricting challenges but would still restrict them to constitutional challenges in the case of congressional redistricting.[4] Yet as the Fifth Circuit recently noted "there are also strong federalism concerns with how a state chooses to divvy up its citizens into congressional districts" as well. *Thomas*, 919 F.3d at 307 (noting that "contemporary critics of the initial judicial foray into review of legislative apportionment viewed courts' redrawing of congressional district as even more intrusive on traditional state prerogatives than judicial redrawing of state legislative districts.")).

*Third*, not only does the State's reading fail to offer any compelling resolution to their asserted federalism concerns (indeed, it makes those concerns worse), it would significantly increase the number of three-judge courts, burdening the federal courts in precisely the way that Congress attempted to alleviate with its 1976 amendment. And that burden would fall particularly hard on the Supreme Court, which would be required to hear an expanded category of cases on direct review. *See* 28 U.S.C. § 1253.

---

[4] The State argues that statutory challenges to congressional redistricting should also be heard by three-judge courts but admits that that argument is not based on the statutory text. Mot. 10.   Because Alpha Plaintiffs do not challenge congressional districts, no position is taken on this issue.

In sum, the State has provided no reason to rewrite a duly enacted statute, especially in light of the clear meaning of the text and the uniformity of the relevant authority. The State's motion should be denied.

## II.   SECTION 2 OF THE VOTING RIGHTS ACT MAY BE ENFORCED THROUGH A PRIVATE RIGHT OF ACTION

The Supreme Court, the Eleventh Circuit, and every other court to hear a Section 2 case has accepted that the statute may be enforced through a private right of action. *See, e.g.*, *Morse v. Republican Party of Va.*, 517 U.S. 186, 232 (1996) ("Although § 2, like § 5, provides no right to sue on its face, 'the existence of the private right of action under Section 2 ... has been clearly intended by Congress since 1965.'" (quoting S. Rep. No. 97-417, at 30 (1982))); *id.* ("We, in turn, have entertained cases brought by private litigants to enforce § 2." (collecting cases)); *Ala. State Conf. of N.A.A.C.P. v. Alabama*, 949 F.3d 647, 652 (11th Cir. 2020) ("Today we agree with both of our sister circuits and the district court in this case, which concluded that it was 'difficult to conceive of any reasonable interpretation of Section 2 that does not involve abrogation of the state's immunity.'"), *rev'd as moot by* 141 S. Ct. 2618 (2021); *Ford v. Strange*, 580 F. App'x 701, 705 n.6 (11th Cir. 2014) (per curiam) ("A majority of the Supreme Court has indicated that section 2 of the Voting Rights Act contains an implied private right of action."); *see also, e.g.*, *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017) (affirming that § 2

17

of the Voting Rights Act provides for a private right of action); *Mixon v. Ohio*, 193 F.3d 389, 398-399 (6th Cir. 1999) (same).

Furthermore, the text of the Voting Rights Act expressly provides for suits by "aggrieved person[s]" to enforce its "voting guarantees" in addition to the United States. *See* 52 U.S.C. § 10302(a) ("Whenever the Attorney General *or an aggrieved person* institutes a proceeding under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment in any State or political subdivision[.]") (emphasis added); *id.* § 10302(b) ("If in a proceeding instituted by the Attorney General *or an aggrieved person* under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment in any State or political subdivision[.]") (emphasis added); *id.* § 10302(c) ("If in any proceeding instituted by the Attorney General *or an aggrieved person* under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment in any State or political subdivision[.]") (emphasis added).

The State claims that these clear statements of Congress's intent to provide a private right of action are insufficient because they do not appear in § 2 of the VRA. Mot. 12-14. However, that argument ignores the text of § 3 of the VRA, which envisions the right of "an aggrieved person" to bring suit "under *any statute* to enforce the voting guarantees of the [F]ourteenth or [F]ifteenth [A]mendment." 52

18

U.S.C. § 10302(a)-(c) (emphasis added). Section 3's broad language is not cabined to that section alone and the State offers no reason to so narrowly read the broad language of that provision.

The State's claim that no private right of action exists to enforce § 2 of the VRA is meritless and without support. This Court should deny the State's motion to dismiss on that basis.

## III.    THIS COURT SHOULD DENY THE STATE'S REQUEST FOR AN INTERLOCUTORY APPEAL

Authorization for an interlocutory appeal is warranted only when a party demonstrates "that there is 'a controlling question of law as to which there is substantial ground for difference of opinion' and that an immediate appeal will 'materially advance the ultimate termination of the litigation.'" *United States v. Zak*, No. 1:18-cv-5774-AT, 2021 WL 5736218, at *2 (N.D. Ga. Oct. 22, 2021) (quoting 28 U.S.C. § 1292(b)). "Certification for immediate appeal of a nonfinal order under § 1292(b) is an extraordinary measure, which is permitted only in exceptional circumstances." *Id.* (citing *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1256 (11th Cir. 2004)). No such extraordinary relief is warranted here because there is no "substantial ground for difference of opinion" and immediate appeal will not "materially advance the ultimate termination of the litigation."

19

**(1) There is no substantial ground for difference of opinion on either of the State's legal claims.** "Neither the mere lack of authority on the issue nor the claim that the district court's ruling is incorrect constitutes a substantial ground for difference of opinion." *Zak*, 2021 WL 5736218, at \*2 (quoting *United States, ex rel Powell v. American InterContinental Univ., Inc.*, 756 F. Supp. 2d 1374, 1379 (N.D. Ga. 2010)). "This criterion for certification is satisfied when the issue is difficult and of first impression, a difference of opinion as to the issue exists within the controlling circuit, or the circuits are split on the issue." *Powell*, 756 F. Supp. 2d at 1378-1379.

Here, no court has adopted the State's view that § 2284(a) requires three-judge district courts for actions raising purely statutory claims challenging the reapportionment of statewide legislative bodies or that § 2 may not be enforced through a private right of action. Neither of these issues are ones of first impression, they have been uniformly decided against the State's view; and there is no circuit split. Accordingly, the State cannot demonstrate that a substantial difference of opinion exists warranting an interlocutory appeal.

**(2) An immediate appeal would not materially advance the ultimate termination of the litigation.** "In determining whether an immediate appeal will 'materially advance the ultimate termination of the litigation,' the Court considers the extent to which additional time and expense may be saved by the appeal and

whether resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *Zak*, 2021 WL 5736218, at \*3. Here, the Alpha Plaintiffs have filed a motion for preliminary injunction that if granted will give the State the opportunity to appeal to the Eleventh Circuit on an interlocutory basis. On appeal of any preliminary injunction, the State will presumably raise its legal arguments. Accordingly, authorizing an interlocutory appeal now will not advance the ultimate termination of this litigation materially faster than would granting the Alpha Plaintiffs' pending motion, and allowing the appellate process to commence from there, which has the important advantage of allowing an opportunity to remedy irreparable harm should Plaintiffs show they are likely to succeed on the merits of their claim. This is especially true where, as here, the State claims that "it is already too late" to implement lawful maps and in any event, time is of the essence given the rapidly approaching candidate filing deadline. Meanwhile, if this Court denies Alpha Plaintiffs' motion for a preliminary injunction, the State may renew its request for authorization for an interlocutory appeal at that time.[5]

_____

[5] This Court may also hold the State's current request in abeyance pending the resolution of Alpha Plaintiffs' motion for preliminary injunction potentially mitigating the need for the State to renew its motion.

21

If this Court were to grant the State's request to authorize an interlocutory appeal, this Court should not stay proceedings. *See* 28 U.S.C. § 1292(b) ("[A]pplication for an appeal [under § 1292(b)] shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."). If necessary, Alpha Plaintiffs are prepared to proceed on parallel tracks in both the Eleventh Circuit and this Court to ensure that VRA-compliant maps are implemented as quickly as possible.

## **CONCLUSION**

For the foregoing reasons, this Court should deny the State's motion to dismiss and deny the State's request for interlocutory appeal.

This 18th day of January, 2022

Respectfully submitted,

/s/ Rahul Garabadu
Sean J. Young (Bar 790399)
*syoung@acluga.org*
Rahul Garabadu (Bar 553777)
rgarabadu@acluga.org
ACLU FOUNDATION OF
GEORGIA, INC.
P.O. Box 77208
Atlanta, Georgia 30357
Telephone: (678) 981-5295
Facsimile: (770) 303-0060

/s/ Debo P. Adegbile
Debo P. Adegbile*
*debo.adegbile@wilmerhale.com*
Robert L. Boone*
*Robert.boone@wilmerhale.com*
Alex W. Miller
*alex.miller@wilmerhale.com*
Maura Douglas*
*maura.douglas@wilmerhale.com*
Eliot Kim*
*eliot.kim@wilmerhale.com*
WILMER CUTLER PICKERING
HALE AND DORR LLP
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

/s/ Edward Williams
Anuradha Sivaram*
*anuradha.sivaram@wilmerhale.com*
Edward Williams*

/s/ Sophia Lin Lakin
Sophia Lin Lakin*
*slakin@aclu.org*
Ari J. Savitzky*
*asavitzky@aclu.org*
Jennesa Calvo-Friedman*
*jcalvo-friedman@aclu.org*
ACLU FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
Telephone: (212) 519-7836
Facsimile: (212) 549-2539

/s/ George P. Varghese
George P. Varghese*
*george.varghese@wilmerhale.com*
Denise Tsai*
*denise.tsai@wilmerhale.com*
Tae Kim*
*tae.kim@wilmerhale.com*
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

/s/ Charlotte Geaghan-Breiner
Charlotte Geaghan-Breiner*
*charlotte.geaghan-breiner@wilmerhale.com*
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real

23

*ed.williams@wilmerhale.com*                    Suite 400
De'Ericka Aiken*                                 Palo Alto, CA 94306
*ericka.aiken@wilmerhale.com*                    (650) 858-6000 (t)
Ayana Williams*                                  (650) 858-6100 (f)
*ayana.williams@wilmerhale.com*
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Attorneys for Plaintiffs

*Pro Hac Vice or Pro Hac Vice pending

24

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

/s/ Rahul Garabadu

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused to be served the foregoing *Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss* with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel or parties of record on the service list.

This 18th day of January, 2022

/s/ Rahul Garabadu