# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ALPHA PHI ALPHA FRATERNITY INC., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BRAD RAFFENSPERGER, <br><br> *Defendant*. | CIVIL ACTION <br><br> FILE NO. 1:21-CV-05337-SCJ |

## **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

# INTRODUCTION

Plaintiffs' response illustrates why the jurisdictional questions raised by Defendant are so significant. Plaintiffs rely on the unique nature of the Voting Rights Act (VRA) and a broad provision about actions enforcing "the voting guarantees of the fourteenth and fifteenth amendments" to the Constitution, 52 U.S.C. § 10302(a), as a sword to argue there is a private right of action under Section 2 of the VRA. But at the same time, Plaintiffs argue that their claims are not constitutional challenges as a shield to limit the three-judge panel statute to non-VRA challenges to districts. *Compare* [Doc. 47, pp. 24-25] *with* [Doc. 47, p. 18]. Both cannot be true.

While Plaintiffs can point to decisions from other Circuits and nonbinding *dicta* in support of their position, none of their arguments demonstrate that the positions they take are settled law. This Court is called on to decide issues of first impression in this Court—and it should grant the motion to dismiss, or at the very least, allow the Eleventh Circuit to decide these issues before this case proceeds. Further, because it is already too late to order any relief for the 2022 elections, *see* [Doc. 45], there is more than enough time to obtain binding direction from the Eleventh Circuit before proceeding with this case.

## ARGUMENT AND CITATION OF AUTHORITY

**I.     Plaintiffs' arguments that § 2284(a) is limited to constitutional challenges is unavailing.**

The most plausible reading of § 2284(a) is one that requires *any* federal-court challenge to state legislative apportionments be heard before a three-judge court. And the unique nature of the VRA, which Plaintiffs espouse in their response, underscores that VRA challenges to congressional districts are also constitutional in nature.

**A.     Plaintiffs' insistence that there is no "determiner" in § 2284(a) is misguided.**

Plaintiffs argue in their Response, [Doc. 47], that the word "the" in § 2284(a), which Defendant characterizes as a determiner which eliminates the carryover of the prepositive modifier, "constitutionality," is just an effort by the statute's drafters to create an uninterrupted parallel structure. But this would be a strange path for the drafters to trod because the chosen structure muddies the interpretative waters rather than clarifies them. Indeed, it is by adding "the" after "or" in § 2284(a) that the statute became an interpretive challenge.

Courts must assume the drafters were aware of interpretative conventions like the series-qualifier canon when selecting the precise language of a statute. "[I]n the realm of public lawmaking, when judges are grappling with enacted texts, linguistic canons apply commonsensical rules of syntax to

2

help us decode the meaning of language." *Thomas v. Reeves,* 961 F. 3d 800, 815 (5th Cir. 2020) (Willet, J., concurring). And "the linguistic canons are not 'special, lawyers-only grammar rules.' [They] are traditional tools of interpretation routinely applied by both the Supreme Court and by [lower] court[s]." *Id.* at 814 n. 23; *see also United States v. Gumbs*, 964 F.3d 1340, 1347 (11th Cir. 2020) (applying series-modifier canon when no determiner present).

The series-qualifier canon readily admits the exception of a determiner, often in the form of the word "the," to interrupt carryover of prepositive modifiers. ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 148 (2012). Thus, § 2284(a) cannot be said to be, as Plaintiffs claim, "a straightforward, parallel" list. To the contrary, "§ 2284(a) is hardly intuitive." *Thomas,* 961 F. 3d at 814 (Willett, J., concurring). But as Defendant outlines in his principal brief, the canons of interpretation, particularly the series-qualifier canon, provide clarity where Congress left it wanting.

Moreover, even if Defendant adopted Plaintiffs' uninterrupted parallel structure view, § 2284(a) is not nearly as parallel as Plaintiffs suggest. [Doc. 47, p. 13]. In order to more clearly communicate the carryover of the prepositive modifier throughout the entire series while also preserving parallel structure,

Congress could simply have repeated the "of" following "constitutionality" following the "or" in the series, as follows:

| "A district court of three judges shall be convened | | |
|---|---|---|
| | "*when* otherwise required by Act of Congress, or | |
| | "*when* an action is filed challenging the constitutionality | |
| | | (a) "*of the apportionment of* congressional districts or" |
| | | (b) *of the apportionment of* any statewide legislative body |

Instead, Congress opted for a different structure, creating the interpretive question now before the Court. And the insertion of "the" in the second part of the list ought not to be viewed as a mere stylistic choice by the drafters, as Plaintiffs suggest. Indeed, this reading butts up against another syntactic canon. "The surplusage canon, lauded as a 'cardinal principle of statutory construction' by the Supreme Court, teaches 'it is no more the court's function to revise by subtraction than by addition.' In other words, every word should be given effect…" *Thomas,* 961 F. 3d at 816-16 (Willett, J., concurring)

4

(internal citations omitted). The Court must avoid Plaintiffs' construction, as it "renders some words altogether redundant." SCALIA & GARNER at 175.

Thus, applying the relevant canons, the best interpretive structure for § 2284 is:

| "A district court of three judges shall be convened | | |
|---|---|---|
| | "*when* otherwise required by Act of Congress, or | |
| | "*when* an action is filed challenging | |
| | | (a) *the* constitutionality of the apportionment of congressional districts or |
| | | (b) *the* apportionment of any statewide legislative body. |

**B.   Plaintiffs mistake an absence of precedent directly on point for authority.**

Plaintiffs inaccurately claim that courts have uniformly rejected Defendant's position on § 2284(a). But that characterization does not follow from the case law because until only recently, "[n]o defendant has ever pressed" the issue. *Thomas,* 961 F. 3d at 823 (Willett, J., concurring). And in the one case where the issue was squarely addressed, the result was a divided *en banc*

5

court. *Compare, Thomas v. Reeves,* 961 F. 3d 800 (5th Cir. 2020) (en banc) (per curiam) (Costa, J., concurring) *with id.* at 810 – 27 (Willett, J., concurring).

In support of their position that § 2284(a) is settled law, Plaintiffs pull largely from cases that paid cursory or no attention at all to the question before this Court. *Rural W. Tenn. African-Am. Affs. Council v. Sundquist,* for example, simply *noted* that the three-judge court disbanded when the constitutional claims were mooted. 209 F. 3d 835, 838 (6th Cir. 2020).[1] It had nothing to say about the propriety of the disbanding, and it seems that no party to that action pressed the issue. Similarly, *Chestnut v. Merrill* involved a statutory challenge to congressional districts, not state legislative districts. 356 F. Supp. 3d 1351 (N.D. Ala. 2019).

Moreover, the fact that, "[n]either the court nor Defendant [in *Chestnut*] could find any purely Section 2 cases heard by a three-judge panel," is hardly dispositive on the issue. [Doc. 47, p. 17]. Indeed. "[o]ne reason for the dearth of precedent [on point is that] section 2 'results cases' are rarely pursued, at least until recently, without accompanying constitutional claims…" *Thomas,* 961 F. 3d. at 823, n. 85 (Willett, J. concurring). And "[a]ny newness to the State's §

---

[1] That case also apparently involved only one legislative district and not the statewide apportionment of the legislative districts. *Sundquist*, 209 F. 3d at 839 (noting difference was one district that was majority-Black).

2284(a) argument reflects the newness of post-*Shelby County* litigation strategy." *Id.* at 826. But "[t]oday's question, fundamentally is about jurisdiction—the very power of federal courts. And 'past practice does not, by itself, create power.'" *Id.* (quoting *Medellin v. Texas,* 552 U.S. 491, 532 (2008)). And crucial for this Court to consider: "a long-established practice does not justify a rule that denies statutory text its fairest reading." *Armstrong v Exceptional Child Ctr., Inc.,* 575 U.S. 320, 329 (2018). The courts have a duty primarily "to legislative text, not to litigation habits that, until now, have gone merrily along, unexamined." *Thomas,* 961 F.3d at 823 (Willett, J., concurring).

### C. Statutory history plainly supports the Defendant's reading of § 2284(a).

Plaintiffs all but ignore the historical record cited by Defendant that shows broad support for the proposition that § 2284(a) applies to statutory challenges to state legislative apportionment cases. They instead claim that Congress simply could not have intended to narrow the reach of the statute, while also "bring[ing] under the purview of the three-judge court statute a category of cases that did not exist at the time the amendment was enacted." [Doc. 47, p. 20]. Putting aside that this directly contradicts the text chosen by Congress, when determining the ultimate scope of a statute, courts must focus on the "broad language that Congress adopted, not on the ripple effects,

7

however unforeseen, that flow[] from it..." *Thomas,* 961 F. 3d at 824 (Willett, J., concurring) (citing *Bostock v. Clayton Cty.,* 140 S. Ct. 1731 (2020) (internal quotations omitted)). Plaintiffs' argument reflects a strain of judicial purposivism long rejected by judges as too close to judicial activism or legislating from the bench.

### D. Federalism concerns lie at the heart of § 2284(a) and explain the scope of the statute.

Plaintiffs essentially offer two reasons why federalism concerns don't come into play when explaining the scope of § 2284(a). First, Plaintiffs suggest reading the statute to encompass statutory claims against state apportionments would *create* federalism concerns, rather than alleviate them. And second, Plaintiffs claim that Defendant's reading would clutter the Supreme Court docket. Neither of these arguments pass muster.

Plaintiffs put forth the rather unremarkable argument that the drawing of congressional districts implicate federalism concerns, too. As a result, Congress would not have ignored those concerns and created two different standards for a three-judge court depending on whether they involved congressional districts or state legislative districts. But this argument ignores the reality that whether a statute creates a sufficiently compelling federalism issue is often a matter of degree. And as Judge Willett pointed out in *Thomas,*

8

the Supreme Court has noted "there are 'fundamental differences' between state and federal line-drawing and that 'substantial state considerations' give states greater latitude in drawing state maps than in drawing congressional maps." 961 F. 3d at 819 n. 53. Thus, it makes sense that Congress would draft a more permissive standard for congressional districts than it would for state legislative districts.[2] As Judge Clement put it in the *Thomas* case: "It is entirely plausible that Congress wanted federal courts to show more deference to state reapportionment plans that only affect state interests than to state reapportionment plans which affect a national interest." *Thomas v. Bryant*, 919 F.3d 298, 323 (5th Cir. 2019) (Clement, J., dissenting), *vacated and rehearing en banc granted by* 2019 U.S. App. LEXIS 28717 (5th Cir. Miss., Sept. 23, 2019).

Finally, Plaintiffs' argument that Defendant's reading of § 2284(a) would overburden the federal judiciary is little more than unsupported conjecture. As has already been painstakingly noted, singular Section 2 statutory challenges to statewide legislative apportionment under the Voting Rights Act are a relatively new litigation strategy. It is difficult to determine how often that

---

[2] As discussed below and in the briefing in *Pendergrass*, Defendant still maintains that challenges under the VRA are so unique that they are constitutional in nature, which provides an additional basis for requiring a three-judge panel in this case.

9

strategy will be used going forward and what success it might have, but, historically, few plaintiffs used the strategy Plaintiffs do here. Statutory claims were not uncommon in the pre-*Shelby County* voting rights regime, but once the Supreme Court declared Section 4 unconstitutional, Section 5's prophylactic preclearance regime (which required three-judge courts), became inoperative. Simply replacing Section 5 statutory claims (which required a three-judge court) with Section 2 statutory claims will hardly overburden the federal judiciary. And to the extent the Supreme Court feels inundated, it can summarily affirm cases presented to it.

This Court should dismiss this case for failure to seek a three-judge court, or at the very least, refer it to the Chief Judge of the Eleventh Circuit for such appointment.

## II. Plaintiffs' attempt to create a private right of action in Section 2 falls short.

When Plaintiffs turn to the question of a private right of action, they begin by acknowledging that courts have "accepted" that Section 2 may be enforced by private parties. [Doc. 47, p. 23]. Defendant agrees: "*cases have assumed—without deciding—*that the Voting Rights Act of 1965 furnishes an implied cause of action under [Section] 2." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021) (Gorsuch, J., concurring) (emphasis

added). But Plaintiffs do not point to a case that "argues that the plaintiffs lack a cause of action" that is binding on this Court.

First, Plaintiffs dramatically overread *Morse v. Republican Party of Va.*, 517 U.S. 186, 232 (1996).[3] That case involved two questions: "whether [Section] 5 of the [Voting Rights] Act required preclearance of the [Virginia Republican] Party's decision to exact the fee and whether appellants were permitted to challenge it as a poll tax prohibited by [Section] 10." *Id.* at 190. Justice Stevens, writing for himself and Justice Ginsburg, explained that the Virginia Republican Party was acting under state law, and thus any changes to the nomination process had to be precleared under Section 5. *Id.* at 210, 219. Justice Stevens' opinion, joined in a concurrence by Justices Breyer, O'Connor, and Souter, concluded that Section 10 of the VRA included a private right of action. *Id.* at 231-232. But the language is not as clear as Plaintiffs would like—the necessary part of the holding was the reliance on *Allen v. State Bd. of Elections*, 393 U.S. 544 (1969), which was an enforcement action under Section 5, and not a case finding a private right of action under Section 2. While

---

[3] Indeed, contra Plaintiffs' position, the United States apparently did not rely on *Morse* when opposing an effort to dismiss a Section 2 case in Texas on a similar ground here, instead relying on the history of private litigants bringing such cases. *See League of United Latin Am. Citizens v. Abbott*, No. EP-21-CV-00259-DCG-JES-JVB, 2021 U.S. Dist. LEXIS 231524, at *5 (W.D. Tex. Dec. 3, 2021) (noting position of United States and not citing *Morse*).

Justice Stevens used some language about Section 2, it is quite the stretch to say that language was *necessary* to the holding about Section 10—at most, Justice Stevens just "assumed—without deciding—that the Voting Rights Act of 1965 furnishes an implied cause of action under [Section] 2." *Brnovich*, 141 S. Ct. at 2350 (Gorsuch, J., concurring).

Second, *Morse* based its holding about private rights of actions on the proposition that "[s]ince § 10 is, by its terms, a statute designed for enforcement of the guarantees of the Fourteenth and Fifteenth Amendments, *see* 42 U.S.C. § 1973h(b) (1988 ed.), Congress must have intended it to provide private remedies." 517 U.S. at 233-234. Applying that logic to Plaintiffs' views on the three-judge court issue would mean that, if Section 2 provides a private right of action, then it must be an action to enforce "the guarantees of the Fourteenth and Fifteenth Amendments." *Id*. This position reinforces Defendant's argument that challenges under the VRA are challenges to the "constitutionality" of district maps—either the VRA is enforcing the Constitution or it is not. Plaintiffs cannot have it both ways.

Third, as Justice Thomas noted, joined by three colleagues in a dissent as to whether a private right of action exists under Section 10 of the VRA, "Section 3 does not, however, identify any of the provisions under which private plaintiffs may sue. The most logical deduction from the inclusion of 'aggrieved

12

person' in § 1973a is that Congress meant to address those cases brought pursuant to the private right of action that this Court had recognized as of 1975, *i.e.*, suits under § 5, as well as any rights of action that we might recognize in the future." *Id.* at 289. No one disputes that the Supreme Court has never decided that question in a case involving Section 2 itself.

Fourth, Plaintiffs rely on the vacated opinion in *Ala. State Conference of the NAACP v. Alabama*, 949 F.3d 647 (11th Cir. 2020) but completely ignore Judge Branch's dissent laying out her view that "Section 2 contains no express authorization enabling individuals to maintain such an action in federal court against a State. Section 2 does not 'refer to the "State" in a context that makes it clear that the State is the defendant to the suit brought by' private plaintiffs in federal court." *Id.* at 658. While Judge Branch was focused on the abrogation of sovereign immunity, the same logic applies to the lack of any basis in the "statute's language" for a right of action. *In re Wild*, 994 F.3d 1244, 1255 (11th Cir. 2021) (en banc). Plaintiffs also rely on a string of other non-precedential cases, including a footnote in *Ford v. Strange*, 580 F. App'x 701, 709 (11th Cir. 2014) that was not necessary to the holding because the Section 2 claim was dismissed for lack of pleading an injury.

Fifth, if Plaintiffs are correct that a private right of action exists as to every section of the Voting Rights Act, [Doc. 47, p. 25], it remains strange that

13

the Supreme Court would devote as much time and effort to determining if such a right exists for the various sections of the Act. It also would render other sections of the Voting Rights Act that confer such power only on the Attorney General to be superfluous, because Plaintiffs propose reading the "any aggrieved person" language into every part of the VRA. *See, e.g.*, 52 U.S.C. § 10101(c) (authorizing only the Attorney General to bring an action under paragraphs (a) and (b)). The Eleventh Circuit, when deciding a lawsuit under brought under the Help America Vote Act did not consider or rely on Section 3 of the VRA to find the action one that enforces "the voting guarantees of the fourteenth and fifteenth amendment" when it found HAVA created no private right of action. *Bellitto v. Snipes*, 935 F. 3d 1192, 1202-03 (11th Cir. 2019).

Finally, Plaintiffs do not—and cannot—point to any "'rights-creating' language" in Section 2. *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001). Their attempt to read Section 3 into an authorization for a private right of action to enforce every part of the VRA strains the text of that section and reinforces Defendant's argument that the VRA enforces constitutional provisions—thus making any challenge under the VRA also a challenge to "constitutionality" for purposes of § 2284. Relying on Congress's intent does not save the clear language of a statute, despite Plaintiffs' efforts to circumvent the lack of any

clear and affirmatively manifested "intent—as reflected in the Act's text and structure—to create a private right of action." *In re Wild*. 994 F. 3d at 1256.

### III. The lack of binding precedent counsels in favor of resolution by the Eleventh Circuit.

As discussed above, the questions of law on this Court's jurisdiction are controlling questions of law. *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004). If the claims must be heard by a three-judge court, then this Court lacks jurisdiction as a single-judge court. *Shapiro v. McManus*, 577 U.S. 39, 44 (2015). Referring the questions now will avoid the waste of judicial resources if a three-judge court is required. *McFarlin*, 381 F.3d at 1259.

### CONCLUSION

Plaintiffs have not shown that there is any binding precedent on either side of the questions before the Court. This Court should grant the motion to dismiss or refer the issue to a three-judge court.

This 20th day of January, 2022.

        Respectfully submitted,

        Christopher M. Carr
        Attorney General
        Georgia Bar No. 112505
        Bryan K. Webb
        Deputy Attorney General
        Georgia Bar No. 743580
        Russell D. Willard

Senior Assistant Attorney General
Georgia Bar No. 760280
Charlene McGowan
Assistant Attorney General
Georgia Bar No. 697316
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*/s/ Bryan P. Tyson*
Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@taylorenglish.com
Frank B. Strickland
Georgia Bar No. 678600
fstrickland@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, Georgia 30339
(678) 336-7249

*Counsel for Defendant*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned certifies that the foregoing Response Brief has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

/s/ Bryan P. Tyson
Bryan P. Tyson