**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| ALPHA PHI ALPHA FRATERNITY INC., et al.,<br><br>     *Plaintiffs*,<br><br>     vs.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia.<br><br>     *Defendant*. | **Case No. 1:21-cv-5337** |

**PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION FOR JUDICIAL NOTICE**

## INTRODUCTION

Defendant seeks judicial notice of unreliable, disputed data from the U.S. Census Current Population Survey, the irrelevant partisan makeup of the current Georgia state legislature, and several irrelevant, incomplete, or misleading facts about candidates and election results. These requests should be denied. If the Court nevertheless grants the motion, it should correct Defendant's facts or take further judicial notice of the information necessary to complete the record.[1]

## LEGAL STANDARD

Federal Rule of Evidence 201(b) provides that "[a] court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "While a court has wide discretion to take judicial notice, the taking of judicial notice of facts is, as a matter of evidence law, a highly limited process."

---

[1] Defendant filed the same motion for judicial notice in the three related litigations presently before the Court. The plaintiffs in *Pendergrass v. Raffensperger*, No. 21-CV-5339, and *Grant v. Raffensperger*, No. 22-CV-122, have filed responses opposing in part the motions filed in their cases. *See* No. 21-CV-5339 (Dkt. 228) (*Pendergrass* response); No. 22-CV-122 (Dkt. 240) (*Grant* response). The *Alpha Phi Alpha* plaintiffs join in the relief sought by the *Pendergrass* and *Grant* plaintiffs, and incorporate by reference the arguments made in those filings.

*Daker v. Holmes*, 2022 WL 2129076, at *9 (11th Cir. June 14, 2022) (internal

quotation marks omitted).  "The reason for this caution is that the taking of judicial

notice bypasses the safeguards which are involved with the usual process of

proving facts by competent evidence in district court."  *Paez v. Sec'y, Fla. Dep't of*

*Corr.*, 947 F.3d 649, 652 (11th Cir. 2020).  As a result, it is only "proper to take

judicial notice of facts with a 'high degree of indisputability' that are 'outside the

area of reasonable controversy.'"  *Dippin' Dots, Inc. v. Frosty Bites Distribution,*

*LLC*, 369 F.3d 1197, 1204 (11th Cir. 2004) (quoting Fed. R. Evid. 201(a) advisory

committee's note).  And only "facts that are relevant to a determination of the

claims presented in a case" may be subject to judicial notice.  *Id.*

## ARGUMENT

### I.    The turnout data from the U.S. Census Current Population Survey that Defendant proffers is unreliable, disputed, and must be presented through expert testimony

The bulk of Defendant's motion concerns voter turnout data from the U.S.

Census Current Population Survey ("CPS") that is both "subject to reasonable

dispute" and from a source whose accuracy can "reasonably be questioned" on the

present record.  Fed. R. Evid. 201(b).  Most notably, the data Defendant proffers

from Tables 4b of the 2018, 2020, and 2022 CPS conflicts with the data Defendant

previously produced and significantly overstates voter turnout—with the degree of

error varying as between racial groups.  But even if *some* CPS data were

appropriately the subject of judicial notice here, the particular figures Defendant

pulls from the CPS data set are not the most accurate for measuring voter turnout

in this case.  These limitations mean that under the circumstances the proper

vehicle for the introduction of the data Defendant proffers is expert testimony on

the subject—which Defendant has waived—not judicial notice.

The CPS is a monthly survey the U.S. Census Bureau conducts on a wide

range of topics.  Questions relating to voting and registration are included in the

CPS every two years.  The Census Bureau acknowledges that voting data collected

through the CPS may contain errors, including as a result of "population controls,"

"survey coverage," and "[r]espondent misreporting."  *See Frequently Asked*

*Questions (FAQs) About Voting and Registration*, U.S. Census Bureau,

https://www.census.gov/topics/public-sector/voting/about/faqs.html (last updated

Nov. 22, 2021).  These errors can result in data that differs from official vote

counts (like those the Georgia Secretary of State collects) and may have significant

effects on the CPS data set.  Most relevant here, academic researchers have found

that the CPS overestimates Black and Hispanic turnout relative to non-Hispanic

white turnout.  *See generally* Stephen Ansolabehere et al., "The Current Population

Survey Voting and Registration Supplement Overstates Minority Turnout," 84

3

*Journal of Politics* 1850 (2022).  Using the CPS to measure voter turnout will thus result in an understatement of white turnout and an overstatement of Black turnout, likely making racial disparities in voter turnout appear smaller than they are.

Plaintiffs' expert Dr. Traci Burch explains these problems with using CPS turnout data in her report and will testify on that subject at trial.  Her report is included on Plaintiffs' exhibit list and drew no objection from the State.  *See* Dkt. 275-1 at 2.  To avoid the shortcomings of CPS's self-reported voter turnout data, Dr. Burch provides voter turnout calculations using actual turnout data from the Georgia Secretary of State that Defendant produced in discovery, as well as population data from the decennial census.  These calculations—which were done *using the data provided by the Defendant*—are different from the turnout figures drawn from the CPS Defendant now proffers.  Dr. Burch explains in her report and will testify at trial that data sources she relied on present the more accurate way of measuring voter turnout by race.  This dispute between the data provided by Defendant and the CPS data he now seeks to introduce alone suffices to deny the motion as to these "facts."

The particular figures that Defendant pulls from the CPS data also understate the racial turnout disparities in this case for a second reason.  Specifically, Defendant seeks to compare voter turnout in the CPS of "white alone individuals"

with "Black alone individuals." *See* Dkt. 276 at 2-3 (Fact 1). But the "white alone" category in the CPS includes both Hispanic and non-Hispanic voters. As the CPS data shows, however, Hispanic voters in Georgia have lower voter turnout than white, non-Hispanic voters. *See, e.g.*, Dkt. 276-1 (showing 2018 Georgia turnout of 52.2% for white alone, and 55.6% for white non-Hispanic alone); Dkt. 276-2 (showing 2020 Georgia turnout of 64.3% for white alone, and 69.5% for white non-Hispanic alone); Dkt. 276-3 (showing 2022 Georgia turnout of 55.3% for white alone, and 60.0% for white non-Hispanic alone). As a result, their inclusion in the "white alone" category understates white turnout, and therefore further understates the relevant racial turnout gap. So when Dr. Burch *did* use CPS data in her report—to analyze voter turnout by educational attainment—she compared turnout between non-Hispanic white alone Georgians, and non-Hispanic Black alone Georgians.[2]

These problems with the CPS turnout data Defendant proffers take it "outside the domain of the clearly indisputable," Fed. R. Evid. 201(a) advisory

---

[2]     As Dr. Burch explains, she used CPS data for this discrete purpose because the Secretary of State does not collect data on the educational attainment of voters. That makes the CPS the only source for examining the effects of educational attainment on voter turnout. But even then, Dr. Burch acknowledges that the use of CPS data may lead to results that diverge somewhat from actual turnout.

committee's note, and demand "the safeguards which are involved with the usual process of proving facts by competent evidence in district court," *Paez*, 947 F.3d at 652.  Indeed, Plaintiffs have offered expert testimony on this data that properly explains its limitations.  Defendant chose not to do the same and should not now be permitted to do an end run around the adversarial process through judicial notice.[3]

## II.    The current partisan makeup of the legislature and certain facts related to candidates are irrelevant, incomplete, or misleading

Additional facts contained in Defendant's motion are not properly subject to judicial notice because they are irrelevant to the claims and defenses in this case, incomplete, or misleading.  *See Dippin' Dots, Inc.*, 369 F.3d at 1204 (judicially noticed facts must be "relevant to a determination of the claims presented in a case"); *United States v. Mayer*, 760 Fed. Appx. 793, 798 (11th Cir. 2019) (affirming denial of motion for judicial notice based on lack of relevance); *United States v. Mitrovic*, 890 F.3d 1217, 1225-26 (11th Cir. 2018) (no error in excluding misleading information even if it could be judicially noticed given "risk of

---

[3]    If the Court were to take judicial notice of the CPS data Defendant proffers, it should make clear that the facts being noticed are simply what the CPS data reports.  Said otherwise, the Court should not accept as true the turnout levels reported by the CPS, even if it accepts as true that the Census Bureau has published the numbers contained in Defendant's motion.  Plaintiffs will then offer expert testimony as to why those published numbers are unreliable.

6

confusion"); *Baker Cnty. Med. Servs., Inc. v. Summit Smith L.L.C.*, 2007 WL
1229702, at *7 n.5 (M.D. Fla. Apr. 25, 2007) (denying judicial notice when
proffered fact was "inaccurate").

Defendant first seeks to introduce facts regarding the partisan makeup of the
Georgia State Legislature as of August 4, 2023 (Fact 3). The present day partisan
composition of the legislature does not affect whether legislative maps signed into
law in December 2021 violate the Voting Rights Act, which requires Plaintiffs to
prove that "a certain electoral law, practice, or structure interacts with social and
historical conditions to cause an inequality in the opportunities enjoyed by *black
and white voters* to elect their preferred representatives." *Thornburg v. Gingles*,
478 U.S. 30, 47 (1986) (emphasis added); *see Pendergrass* Dkt. 228; *Grant* Dkt.
240. Said otherwise, how many Democrats and Republicans were elected under
maps this Court already found were likely illegal (*see* Dkt. 134) is not relevant to
whether those maps unlawfully dilute the voting strength of Black Georgians.

Nor are facts regarding the success of non-Black minority candidates in
statewide elections (Facts 4.f, 4.g, and 4.h) relevant to whether Plaintiffs can prove
the unlawful dilution of Black Georgians' votes. *See Pendergrass* Dkt. 228; *Grant*
Dkt. 240. Plaintiffs have not brought claims on behalf of minority coalitions, and
"an inquiry into voter preferences as it relates to the race of the candidate is not

necessary to prove the second and third *Gingles* preconditions," Dkt. 268 at 49

(Order Denying Defendant's Motion for Summary Judgment).  But to the extent

the Court does decide to take judicial notice of these facts, it should also take

judicial notice of the fact that John King's opponent was Black.  *See* Dkt. 229 at

364 (Appendix A1 of the Expert Report of Dr. Lisa Handley).  Similarly, it should

take judicial notice of the fact that Justice Carla McMillian has been elected to

nonpartisan statewide office twice, both times running uncontested.  See Ex. 1

(2022 Election Results); Ex. 2 (2014 Election Results).

Defendant also seeks to take judicial notice of Lucy McBath's election to

Congress (Fact 4.e), but the mere fact of McBath's election to a non-statewide,

federal office is not relevant to any claims or defenses in this case concerning state

legislative districts.  Defendant does not identify whether voters in McBath's

district are within the areas of interest Plaintiffs' expert Dr. Lisa Handley analyzed,

nor proffer any expert analysis of voter behavior in the referenced 2018 election.

Finally, it is not appropriate for this Court to take judicial notice of

Defendant's proposed fact concerning Fitz Johnson (Fact 4.c) to the extent that it

inaccurately suggests that he won a contested election to secure the 2022

Republican nomination for Public Service Commission District 3.  Johnson ran

unopposed in 2022, *see* Dkt. 276-7 at 1, and has never won a contested election for

8

the Public Service Commission.  *See* Office of the Governor, "Gov. Kemp Appoints Fitz Johnson to Public Service Commission" (July 21, 2021), https://gov.georgia.gov/press-releases/2021-07-21/gov-kemp-appoints-fitz-johnson-public-service-commission.  Without such additional information, Defendant's proposed fact is misleading and subject to reasonable dispute.

## CONCLUSION

For these reasons, Defendant's motion for judicial notice with respect to CPS turnout data, the partisan makeup of the current Georgia state legislature, the success of non-Black candidates, Lucy McBath's 2018 congressional election, and Fitz Johnson's Republican nomination should be denied.   In the alternative, the Court should correct Defendant's facts or judicially notice the additional information necessary to complete the record.

Respectfully submitted,

By: /s/*Rahul Garabadu*

Rahul Garabadu (Bar 553777)
*rgarabadu@acluga.org*
Cory Isaacson (Bar 983797)
Caitlin F. May (Bar 602081)
ACLU FOUNDATION OF GEORGIA,
  INC.
P.O. Box 570738
Atlanta, Georgia 30357
Telephone: (678) 981-5295
Facsimile: (770) 303-0060


/s/*Debo Adegbile*

Debo Adegbile*
*debo.adegbile@wilmerhale.com*
Robert Boone*
Alex W. Miller*
Cassandra Mitchell*
Maura Douglas*
Juan M. Ruiz Toro*
Joseph D. Zabel*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

/s/*Sophia Lin Lakin*

Sophia Lin Lakin*
*slakin@aclu.org*
Ari J. Savitzky*
Ming Cheung*
Kelsey A. Miller*
Casey Smith*
ACLU FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
Telephone: (212) 519-7836
Facsimile: (212) 549-2539


George P. Varghese*
Denise Tsai*
Tae Kim*
WILMER CUTLER PICKERING HALE
  AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000


Ed Williams*
De'Ericka Aiken*
Sonika R. Data*
WILMER CUTLER PICKERING HALE
  AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, D.C. 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Charlotte Geaghan-Breiner*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real
Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Marisa A. DiGiuseppe*
Anuj Dixit*
WILMER CUTLER PICKERING HALE
  AND DORR LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

*Counsel for Plaintiffs*
*Admitted *pro hac vice*

11

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1**

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

*/s/ Rahul Garabadu*

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day caused to be served the foregoing *Plaintiffs' Response to Defendant's Motion for Judicial Notice* with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel or parties of record on the service list:

This 14th day of August, 2023.

*/s/ Rahul Garabadu* _____

13