IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ALPHA PHI ALPHA FRATERNITY INC., et al.,<br>    Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia,<br>    Defendant. | CIVIL ACTION FILE<br><br>No. 1:21-CV-5337-SCJ |
| COAKLEY PENDERGRASS et al.,<br>    Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER et al.,<br>    Defendants. | CIVIL ACTION FILE<br><br>No. 1:21-CV-5339-SCJ |
| ANNIE LOIS GRANT et al.,<br>    Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER et al.,<br>    Defendants. | CIVIL ACTION FILE<br><br>No. 1:22-CV-122-SCJ |

## **ORDER**

This matter appears before the Court on Defendants' Motion to Take Judicial Notice of certain adjudicative facts, which was filed in all three cases. Alpha Phi Alpha, Doc. No. [276][1]; Pendergrass Doc. No. [224]; and Grant Doc. No. [238]. The Plaintiffs each responded in opposition. Alpha Phi Alpha, Doc. No. [279]; Pendergrass Doc. No. [228]; and Grant Doc. No. [240]. Defendants replied in support of their Motion. Alpha Phi Alpha, Doc. No. [282]; Pendergrass Doc. No. [233]; and Grant Doc. No. [245]. The Court now rules on the Motion.

"[T]he taking of judicial notice of facts is, as a matter of evidence law, a highly limited process . . . [and] would bypass[ ] the safeguards which are involved with the usual process of proving facts by competent evidence in district court." Carrizosa v. Chiquita Brands Int'l, Inc., 47 F.4th 1278, 1307 (11th Cir. 2022) (quoting Shahar v. Bowers, 120 F.3d 211, 214 (11th Cir. 1997) (en banc)). Pursuant to Rule 201 of the Federal Rules of Civil Procedure, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it:

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

2

(1) is generally known within the trial court's territorial jurisdiction, or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201(b). "Indisputability is a prerequisite" to judicial notice. Grayson v. Warden, Comm'r, Alabama Doc, 869 F.3d 1204, 1225 (11th Cir. 2017) (quoting United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994)).

Defendants ask the Court to take judicial notice of (1) Census Bureau data on voter turnout and registration from the U.S. Census Current Population Survey in 2018, 2020, and 2022; (2) that in 2011, the United States Department of Justice precleared the 2011 Georgia state Senate, state House, and congressional districts under Section 5 of the Voting Rights Act; (3) the current partisan makeup of the Georgia Legislature; and (4) the results of elections involving certain candidates in Georgia elections, as well as those candidates racial and partisan demographics[2]. Alpha Phi Alpha Doc. No. [276]; Pendergrass Doc. No. [224]; and Grant Doc. No. [238]. The Court will discuss each request in turn.

---

[2] Specifically, Defendants seek judicial notice of the candidates and election results from the 2022 Georgia Republican Primary for U.S. Senate, the 2022 Republican Primary Election results for Public Service Commision District 3, the

3

All Plaintiffs dispute the accuracy of the data in Census Bureau Tables 4b for the 2018, 2020, and 2022 elections. Alpha Phi Alpha Doc. No. [279], 3–7; Pendergrass Doc. No. [228], 3–6; Grant Doc. No. [240], 3–6. The Plaintiffs also argue that the partisan makeup of the Georgia legislature and the facts regarding certain candidates are irrelevant. Alpha Phi Alpha Doc. No. [279], 7–10; Pendergrass Doc. No. [228] 7–8; Grant Doc. No. [240], 7–8. The Alpha Phi Alpha Plaintiffs also argue that the facts regarding Commissioner Johnson's election are inaccurate. Alpha Phi Alpha Doc. No. [279], 9.

### 1. *Census Data*

The Court declines to take judicial notice of the Census Bureau data found in Table 4b from 2018, 2020, and 2022. Table 4b presents the national and statewide reported voter turnout and registration numbers by sex and race. Alpha Phi Alpha Doc. Nos. [276-1]–[276-3]; Pendergrass Doc. Nos. [224-1]–[224-3]; Grant Doc. Nos. [238-1]–[238-3]. The Census Bureau website states that the

---

racial makeup of Senator Warnock and Mr. Walker, the election results for Georgia's 2018 Sixth Congressional District race, the Georgia Insurance Commissioner's partisan and racial demographics, the results from the 2022 General Election for Georgia's Insurance Commissioner, and the racial demographics for Justic McMillian.  Alpha Phi Alpha Doc. No. [276], 5; Pendergrass Doc. No. [224], 5; and Grant Doc. No. [238], 5.

statistics about voting and registration "are based on replies to survey inquiries about whether individuals were registered and/or voted in specific national elections." "About Voting and Registration" U.S. Census Bureau, https://www.census.gov/topics/public-sector/voting/about.html (last revised Nov. 22, 2021). Meaning that the results are based on self-reported responses to survey questions. Additionally, the methodology for reaching these results "us[es] a probability selected sample of about 60,000 occupied households." "Methodology," U.S. Census Bureau, https://www.census.gov/programs-surveys/cps/technical-documentation/methodology.html (last revised Nov. 19, 2021). This means the data is based on a sample of voters and not based on the actual number of voters who registered to vote in Georgia and who did, in fact, vote in that election.

The Census Bureau itself acknowledges that its data may differ from other data sets and that errors may exist in its findings. "Differences between the official counts and the CPS may be a combination of an understatement of official numbers and an overstatement in the CPS estimates. "Frequently Asked Questions (FAQs) About Voting and Registration," U.S. Census Bureau, https://www.census.gov/topics/public-sector/voting/about/faqs.html (last

5

revised Nov. 22, 2021). It also notes that "[s]ome errors in estimating turnout in the CPS might be the result of population controls and survey coverage." Id.

As relevant to determining whether to take judicial notice of the Census Bureau data, the voter turnout numbers differ between the Census Bureau and the Georgia Secretary of State[3]. The Court found that the reported voter turnout differed when comparing the Georgia Secretary of State's Election Hub's data on the November 2022 General Election and the Census Bureau's 2022 Data. For example, the Georgia Secretary of State's website reports that 56.9% of Georgia's registered voters voted in the November 2022 General Election. Id. In contrast, the Census Bureau reports a voter turnout rate of 81.95% for registered

---

[3] The Georgia Secretary of State's Office compiles voter turnout data for each election. "Voter History File," Georgia Online Voter Registration, https://mvp.sos.ga.gov/s/voter-history-files (last visited Aug. 23, 2023); "Absentee Files," Georgia Online Voter Registration, https://mvp.sos.ga.gov/s/voter-absentee-files (last visited Aug. 23, 2023). For the most recent elections, the Georgia Secretary of State's Election Hub compiles this data and shows the total voter turnout as well as the turnout by race, gender, and age group. "Election Data Hub," Ga. Secr'y of State, https://sos.ga.gov/election-data-hub (last visited Aug. 23, 2023).

voters in 2022. [4, 5] Alpha Phi Alpha Doc. No. [276-3]; Pendergrass Doc. No. [224-3]; Grant Doc. No. [238-3].

Given that the Census Bureau expressly states that its voter turnout and registration data has errors and that it differs from the data provided by the Georgia Secretary of State, the Court finds that judicial notice is improper. The accuracy of the voter turnout data, as provided in the Census Bureau's Table 4b, is questioned by the Census Bureau itself. Additionally, as shown by the data adduced from the Secretary of State's website, the data is not indisputable. Accordingly, the Court declines to take judicial notice of the data from Census Bureau Table 4b for the 2018, 2020, and 2022 elections.

### 2. *DOJ Preclearance*

The Court will take judicial notice that the DOJ precleared Georgia's 2011 legislative and congressional maps under Section 5 of the Voting Rights Act.

---

[4] The Census Bureau data reports that 5,275 people in their survey were registered voters. Alpha Phi Alpha Doc. No. [276-3], 4; Pendegrass Doc. No. [224-3], 4; Grant Doc. No. [238-3], 4. The total number of individuals that reported that they voted in 2022 was 4,323. Id. Meaning, that the 2022 voter turnout rate for citizen registered voters was 81.95%. Id.

[5] The Georgia Secretary of State data is specific to each election, whereas the Census Bureau data does not state which races it was considering.

7

Alpha Phi Alpha Doc. No. [276], 4; Pendergrass Doc. No. [224], 4; Grant Doc. No. [238], 4. No Party challenges that the DOJ precleared Georgia's 2011 legislative and congressional maps under Section 5. The Court finds that the preclearance is a fact that can readily be determined by sources whose accuracy cannot reasonably be questioned. Accordingly, the Court takes judicial notice that the DOJ precleared Georgia's 2011 state Senate, state House, and congressional maps under Section 5 of the Voting Rights Act.

### 3. *Partisan Makeup of the Georgia Legislature*

The Court will take judicial notice of the partisan makeup of the current Georgia Legislature. Alpha Phi Alpha Doc. No. [276], 4; Pendergrass Doc. No. [224], 4; Grant Doc. No. [238], 4. The Alpha Phi Alpha Plaintiffs argue that the current makeup is irrelevant because "[t]he present day partisan composition of the legislature does not affect whether legislative maps signed into law on December 2021 violate the Voting Rights Act." Alpha Phi Alpha Doc. No. [279], 8. Similarly, the Pendergrass and Grant Plaintiffs argue that the "partisan makeup of current Georgia legislature has no bearing on whether disparities exist between the opportunities afforded to Black and White voters in Georgia." Pendergrass Doc. No. [228], 8; Grant Doc. No. [240], 8.

First, no Party has challenged the accuracy of the partisan makeup of the Georgia legislature. The Court finds that this information is readily determined from sources whose accuracy cannot reasonably be questioned.

Second, the Court disagrees with the Plaintiffs and finds that the current partisan makeup of the Georgia Legislature may be relevant to the overall determination of whether Georgia elections are equally open to Black voters. As the Eleventh Circuit noted, "adjudicative facts are facts that are relevant to a determination of the claims presented in a case." Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC, 369 F.3d 1197, 1204 (11th Cir. 2004). As the Court noted in its summary judgment orders, "[t]he Court will [ ] consider Defendants' evidence of a non-racial motivation," i.e., partisanship, "at the totality of the circumstances phase" of the case. Alpha Phi Alpha Doc. No. [215], 54–55; Pendergrass Doc. No. [215], 54–55. Accordingly, the Court finds that evidence regarding the partisan makeup of the Georgia Legislature may be relevant to that inquiry.

Thus, the Court takes judicial notice of the partisan makeup of the Georgia Legislature. The Court notes, however, that taking judicial notice of these facts is not a determination of the weight it will assign to them at trial.

9

### *4.     Election Results*

The Court will take judicial notice of the election information provided in Defendant's motion. The <u>Pendergrass</u> and <u>Grant</u> Plaintiffs argue that "[t]he success of non-Black candidates in statewide elections is [ ] irrelevant because Plaintiffs have not brought coalition claims alleging vote dilution on behalf of multiple minority groups." <u>Pendergrass</u> Doc. No. [228], 8; <u>Grant</u> Doc. No. [240], 8. The <u>Alpha Phi Alpha</u> Plaintiffs argue the same. <u>Alpha Phi Alpha</u> Doc. No. [279], 8–9. They also argue that Lucy McBath's election data is not relevant because it is not clear that voters in her district are the affected voters. <u>Id.</u> at 9. Finally, they argued that the facts regarding Commissioner Johnson are misleading because his candidacy was unopposed. <u>Id.</u>

The Court finds that the listed election results are readily determined from sources whose accuracy cannot reasonably be questioned. See <u>Scott v. Garlock</u>, 2:18-cv-981-WKW-WC, 2019 WL 4200400, at *3 n4 (M.D. Ala. July 31, 2019) (taking judicial notice of the publicly filed election results). Additionally, the Court finds the listed election results are all adjudicative facts because they may be relevant to determining whether Georgia's elections are equally open to Black voters. As was stated above, taking judicial notice of the facts related to

10

certain candidates and their election results (<u>Alpha Phi Alpha</u> Doc. No. [276], 5; <u>Pendergrass</u> Doc. No. [224], 5; and <u>Grant</u> Doc. No. [238], 5)[6] is not a determination of the weight that it will assign to these facts.

In conclusion, the Court **DENIES** Defendants' Motion to Take Judicial Notice with regard to the data contained Census Bureau Table 4b for the 2018, 2020, and 2022 elections. The Court **GRANTS** the remainder of the Motion.

IT IS SO ORDERED this 23rd day of August, 2023.

_____
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

---

[6] The Court will also take judicial notice that Commissioner Johnson's 2022 election was unopposed. See <u>Alpha Phi Alpha</u> Doc. No. [279], 9.