# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ALPHA PHI ALPHA FRATERNITY INC., et al., | ) No. 1:21-CV-05337-SCJ )  ) |
| *Plaintiffs,* | ) ) |
| v. | ) ) |
| BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia, | ) ) ) ) |
| *Defendant.* | ) ) |
| COAKLEY PENDERGRASS et al., | ) No. 1:21-CV-05339-SCJ ) |
| *Plaintiffs,* | ) ) |
| v. | ) |
| BRAD RAFFENSPERGER et al., | ) ) |
| *Defendants.* | ) ) |
| ANNIE LOIS GRANT et al., | ) No. 1:22-CV-00122-SCJ ) |
| *Plaintiffs,* | ) ) |
| v. | ) |
| BRAD RAFFENSPERGER et al., | ) ) |
| *Defendants.* | ) |

**AMICI CURIAE BRIEF OF THE GEORGIA STATE CONFERENCE OF THE NAACP, THE GEORGIA COALITION FOR THE PEOPLE'S AGENDA, INC., GALEO LATINO COMMUNITY DEVELOPMENT FUND INC., COMMON CAUSE, LEAGUE OF WOMEN VOTERS OF GEORGIA, JASMINE BOWLES, DR. CHERYL GRAVES, DR. URSULA THOMAS, DR. H. BENJAMIN WILLIAMS, AND BRIANNE PERKINS IN OPPOSITION TO DEFENDANTS' PROPOSED REMEDIAL MAPS**

## **TABLE OF CONTENTS**

Page

STATEMENT OF AMICI CURIAE ............................................................................. 1

ARGUMENT ................................................................................................................ 4

I.   THE COURT SHOULD REJECT THE STATE'S REMEDIAL
     MAPS AND APPOINT A SPECIAL MASTER. ............................................. 4

     A.   THE STATE UNNECESSARILY ENGAGED IN
          WIDESPREAD DISTRICT RENUMBERING. ..................................... 8

     B.   THE STATE'S PROPOSED REMEDIAL PLANS
          ELIMINATE EXISTING BLACK OPPORTUNITY
          DISTRICTS. .......................................................................................... 10

II.  THE NAACP PLAINTIFFS HAVE PENDING CLAIMS NOT
     ADDRESSED BY THE COURT ORDER OR THE REMEDIAL
     MAPS. ............................................................................................................... 12

CONCLUSION ............................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alpha Phi Alpha Fraternity Inc. v. Raffensperger*,
 No. 21-05337, 2023 WL 7037537 (N.D. Ga. Oct. 26, 2023)...........................5, 6

*Milligan v. Co-Chairs of Alabama Permanent Legislative Comm. on Reapportionment*,
 No. 23-12922, 2023 WL 6568350 (11th Cir. Oct. 3, 2023)................................7

*Singleton v. Allen*,
 No. 21-1291, 2023 WL 5691156 (N.D. Ala. Sept. 5, 2023)................................7

*White v. State of Ala.*,
 74 F.3d 1058 (11th Cir. 1996) .....................................................................7, 10

*Wright v. Sumter Cnty. Bd. of Elections & Registration*,
 2020 WL 499615 (M.D. Ga. Jan. 29, 2020), *amended on reconsideration on other grounds*, 2020 WL 11772601 (M.D. Ga. Apr. 8, 2020)...........................................................................................................6

**Statutes**

Voting Rights Act Section 2 ..........................................................................*passim*

## STATEMENT OF AMICI CURIAE

Amici Curiae, the Georgia State Conference of the NAACP, the Georgia Coalition for the People's Agenda, Inc., and GALEO Latino Community Development Fund, Inc. (collectively, the "NAACP Plaintiffs"); and Common Cause, the League of Women Voters of Georgia, Jasmine Bowles, Dr. Cheryl Graves, Dr. Ursula Thomas, Dr. H. Benjamin Williams, and Brianne Perkins (collectively, the "Common Cause Plaintiffs") are plaintiffs in consolidated lawsuits challenging the legality and constitutionality of Georgia's Congressional, Senate, and House legislative maps. *See Georgia State Conference of the NAACP et al. v. State of Georgia*, 1:21-CV-5338-ELB-SCJ-SDG); *Common Cause, et al. v. Brad Raffensperger*, (1:21-CV-00090-SCJ-SDG-ELB) (collectively, the "GA NAACP and Common Cause cases"). Trial in those cases were stayed pending the appeal of this Court's October 26, 2023 Order entered in *Alpha Phi Alpha v. Raffensperger*, No. 21-05337; *Pendergrass v. Raffensperger*, No. 21-05339; and *Grant v. Raffensperger*, No. 22-00122 (N.D. Ga. Oct. 26, 2023), which enjoined use of Georgia's 2021 Congressional, State Senate, and State House of Representatives redistricting plans. The *GA NAACP* and *Common Cause* cases include overlapping claims with the instant matter, causing the GA NAACP Plaintiffs and the Common Cause Plaintiffs to share a vested interest in the remediation related to those claims, which are intertwined.

-1-

Additionally, the organizational plaintiffs are civil rights organizations committed to protecting the right to vote and eliminating discrimination and inequality in any form.

**The Georgia State Conference of the NAACP** ("GA NAACP") is a unit of the National NAACP, and is the oldest and one of the largest, most significant organizations promoting and protecting the civil rights of African Americans and other racial and ethnic minorities in Georgia. The GA NAACP is a non-partisan, interracial, nonprofit membership organization with a mission to eliminate racial discrimination through democratic processes and ensure the equal political, educational, social, and economic rights of all persons, in particular African Americans. Protecting and promoting the voting rights of Black voters, other voters of color, and underserved communities is essential to this mission. The GA NAACP has approximately 10,000 members across approximately 180 local units, residing in at least 120 counties in Georgia, including in areas affected by these remedial plans.

**GALEO Latino Community Development Fund, Inc.** ("GALEO") was founded in 2004 and works to increase civic engagement and leadership development of the Latinx community across Georgia. Protecting and promoting the voting rights of Georgia's Latinx U.S. citizens is essential to this mission.

GALEO has over 230 members in Georgia, in over 35 counties and 70 cities, including in areas affected by the proposed remedial maps.

**The Georgia Coalition for the People's Agenda** ("GCPA") was founded in 1998 by Reverend Joseph Lowery, and is an umbrella organization of human rights, civil rights, labor, women's, youth, and peace and justice groups which advocate for, among other things, voting rights protection and elimination of barriers to the ballot box for all Georgians.  GCPA is a coalition of more than 30 organizations, which collectively have more than 5,000 individual members across the state of Georgia in various cities and counties, including in areas impacted by the proposed remedial maps.

**Common Cause** is a nonprofit corporation and nonpartisan democracy group dedicated to fair elections and making government at all levels more representative, open, and responsive to the interests of all people. Founded in 1970 with offices in Atlanta, Georgia, Common Cause has more than 26,000 members across Georgia, including in the areas affected by the remedial maps before the court. Unfair and discriminatory redistricting directly frustrates and impedes Common Cause's core mission of making government more responsive to the interests of communities by diminishing the voices of the voters Common Cause works to engage. As a result, Common Cause has an interest in ensuring that Black Georgians do not have their voting strength diluted in Georgia's redistricting plans.

**League of Women Voters of Georgia** (the "League") is a nonpartisan, nonprofit, grassroots organization committed to empowering voters and defending democracy in Georgia since 1920, especially for those who have been left out of the democratic process. With 11 local Leagues around the state, the League has approximately 550 members in Georgia, including in the areas affected by the remedial maps before the court. As part of its mission, the League—including local Leagues—advocates for fair and nondiscriminatory maps, which necessarily include effective representation of racial and linguistic minorities. Unfair and discriminatory redistricting directly frustrates and impedes the League's core mission of protecting the rights of voters the League works to engage, including Black voters and residents. As a result, the League has an interest in ensuring that Black Georgians do not have their voting strength diluted in Georgia's redistricting plans.

**Jasmine Bowles, Cheryl Graves, Dr. Ursula Thomas, Dr. H. Benjamin Williams, and Brianne Perkins** are Black registered voters who reside in the Metro Atlanta area. They have an interest in ensuring that their voting strength and the voting strength of other Black voters is not diluted in Georgia's redistricting plans.

## ARGUMENT

### I. The Court Should Reject the State's Remedial Maps and Appoint a Special Master.

The new maps should be rejected because the State unequivocally disobeyed this Court's prohibition that it not "eliminat[e] minority opportunity districts" in

remedying the Section 2 violations. Grasping precisely what the State did in response to the Court's order takes some doing, however, because the State has engaged in a "shell game," moving around and renumbering, reordering, and reorganizing the districts to make it appear that the proposed remedial maps comply with the Court's Order, when in fact they do not. To aid the Court in piercing through this maze, Amici have prepared a computer-enabled "cross-walk" to match the old voting districts to the new proposed voting districts. *See* December 12, 2023 Declaration of Dr. Moon Duchin ("Duchin Decl."), attached hereto as Exhibit B, at 2-3 (renumbering). Employing the "cross-walk" not only clarifies what the State actually did, it also helps to reveal that the State failed to make the changes ordered by the Court.

On October 26, 2023, this Court issued an Opinion and Memorandum of Decision (the "Court Order") holding Georgia's Congressional, Senate, and House maps violated Section 2 of the Voting Rights Act and ordering the General Assembly to draw new maps that included:

> [A]n additional majority-Black congressional district in west-metro Atlanta; two additional majority-Black Senate districts in south-metro Atlanta; two additional majority-Black House districts in south-metro Atlanta, one additional majority-Black House district in west-metro Atlanta, and two additional majority-Black House districts in and around Macon-Bibb.

*Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, No. 21-05337, 2023 WL 7037537, at \*143 (N.D. Ga. Oct. 26, 2023). The Court also unequivocally ordered that the

"State cannot remedy the Section 2 violations described herein by *eliminating minority opportunity districts* elsewhere in the plans." *Id*. (emphasis added).

The term "minority opportunity districts"—distinct from the term "majority-Black district or majority-Black opportunity district"—is a redistricting term of art "meaning [] district[s] in which [minorities] have a realistic opportunity to elect a candidate of choice." *See Wright v. Sumter Cnty. Bd. of Elections & Registration*, 2020 WL 499615, at *5 (M.D. Ga. Jan. 29, 2020), *amended on reconsideration on other grounds*, 2020 WL 11772601 (M.D. Ga. Apr. 8, 2020), and *aff'd*, 979 F.3d 1282 (11th Cir. 2020). Thus, the Court "retain[ed] jurisdiction to determine whether the remedial plans adopted by the General Assembly remedy the Section 2 violations by incorporating *additional legislative districts* in which Black voters have a *demonstrable opportunity to elect* their candidates of choice." *Alpha Phi Alpha Fraternity Inc.*, 2023 WL 7037537, at *143 (emphasis added). But the State did exactly what the Court ordered it not to do.

The Court's clear warning that the State may not remedy the Section 2 violations by approving plans that "eliminate minority opportunity districts elsewhere in the plans" accords with Voting Rights Act precedent. "A judicial remedy fashioned under section 2 must. . . enhance the ability of the plaintiffs to elect their candidates of choice. Any remedy that has the effect of eliminating this essential element of choice is invalid, for it contravenes the spirit and purpose of the

-6-

Act." *White v. State of Ala.*, 74 F.3d 1058, 1069–70 (11th Cir. 1996). And courts may not approve remedial plans that "only partially remed[y]" the Section 2 violation. *Singleton v. Allen*, No. 21-1291, 2023 WL 5691156, at *50 (N.D. Ala. Sept. 5, 2023), *appeal dismissed sub nom. Milligan v. Co-Chairs of Alabama Permanent Legislative Comm. on Reapportionment*, No. 23-12922, 2023 WL 6568350 (11th Cir. Oct. 3, 2023).

The Court's clear warning was—unfortunately—prescient. Instead of drawing *additional* Black opportunity districts to remedy the Section 2 violations, the State destroyed districts in which Black voters had the opportunity to elect candidates of choice. The net result is *fewer* opportunities for Black voters to elect candidates of choice in the Congressional and House plan. Specifically, while the enjoined Congressional map had five effective[1] Black opportunity districts, the State's new proposed Congressional map has *only four*. Duchin Decl. at 4. Similarly, while the enjoined House map had sixty-nine Black opportunity districts effective for Black voters, the State's new proposed House plan has *only sixty-eight. Id.* at 5. Further, the enjoined Senate map had *nineteen* Black opportunity districts, and the State's new proposed Senate plan *only has twenty*—thus the proposed plan

---

[1] According to Plaintiffs' expert Dr. Moon Duchin, a district is effective for Black voters if Black voters would have elected candidates of choice in three out of four select primary elections and five out of eight select general elections. Duchin Decl. at 4. In this brief, a district is deemed an "effective" opportunity district for Black voters if it meets these criteria.

has only one additional opportunity district when compared to the enjoined plan, not two additional opportunity districts as ordered by this Court. *Id.* at 4. The proposed maps therefore do not comply with this Court's command that the State add one additional Black opportunity Congressional district, two additional Black opportunity Senate districts, and five additional Black opportunity House districts.

The State essentially treated the Court's order as a game of Whack-A-Mole—appearing to make changes to comply with the Order in one section of the state while simultaneously undermining voting rights in other sections of the state, and helping mask the multitude of changes that violate the Order by renumbering the districts. The Court should not tolerate the State's gamesmanship. It should reject the proposed remedial plans and appoint a special master to draw new plans, following a period of public hearings and comment.

### A. The state unnecessarily engaged in widespread district renumbering.

One notable feature of the State's proposed plans is that the State engaged in widespread district renumbering without any geographic justification. *See* Duchin Decl. at 2-3. This renumbering highlights the State's "shell game," as its only logical purpose is to create confusion in an attempt to hide the State's failure to comply with the Court Order.

In the Congressional plan, the State changed the district numbering of three districts instead of using the district number that would have best geographically matched districts in the enjoined plan—proposed Congressional District 7 (not effective for Black voters) best aligns with enjoined Congressional District 6 (not effective for Black voters), proposed Congressional District 13 (effective for Black voters) best aligns with enjoined Congressional District 7 (effective for Black voters), and proposed Congressional District 6 (effective for Black voters) best aligns with enjoined Congressional District 13 (effective for Black voters). *Id*. at 2, Table 1. This merry-go-round allows the State to claim that proposed Congressional District 6 is an additional Black opportunity district, when in reality it simply replaces enjoined Congressional District 13 (already effective for Black voters) in disguise. *Id*., Figure 1. These three proposed districts—just like their most geographically equivalent districts in the enjoined plan—comprise two effective Black opportunity districts. *See id.* at 4. No additional Black opportunity district was created as ordered.

The State also engaged in misdirection by renumbering of districts in the proposed Senate and House maps, as demonstrated below:

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SD | State numbers 2023 | 38 | 42 | 6 | 28 | 35 | 44 | 17 | | | | |
| | Best match to 2021 | 6 | 17 | 28 | 35 | 38 | 42 | 44 | | | | |
| HD | State numbers 2023 | 61 | 64 | 40 | 82 | 74 | 101 | 84 | 115 | 116 | 91 | 92 |
| | Best match to 2021 | 40 | 61 | 64 | 74 | 78 | 81 | 82 | 84 | 91 | 92 | 93 |
| HD | State numbers 2023 | 107 | 93 | 106 | 117 | 78 | 81 | 149 | 135 | 134 | 133 | |
| | Best match to 2021 | 101 | 106 | 107 | 115 | 116 | 117 | 133 | 134 | 135 | 149 | |

*See id*. at 2-3, Tables 2 and 3.

Notably, in the proposed Senate plan, several of these districts—Senate Districts 17, 28, 35, and 44—are among the districts that comprise the Section 2 vote dilution area identified in the Court Order, making it more difficult to evaluate compliance. *Id*. at 2-3. And in the proposed House plan, seven districts—House Districts 40, 81, 82, 101, 133, 134, and 149—are completely disjointed from their prior geographic position. *Id*. at 3. For the Court's convenience, "cross-walks" decoding the district renumbering in the proposed remedial plans is included with Dr. Duchin's declaration. *Id*. at 2-3.

### B. The State's proposed remedial plans eliminate existing Black opportunity districts.

The State eliminated effective opportunity districts for Black voters in each of the proposed plans despite being ordered not to do so by this Court. As a result, the remedial plans do not "enhance the ability of [Black voters] to elect their candidates of choice," *White*, 74 F.3d at 1069–70. Indeed, the proposed Congressional and House plans each contain one *fewer* Black opportunity district that is effective for Black voters, and the proposed Senate plan contains only one additional effective district for Black voters—instead of the two the Court instructed the State to draw.

**Proposed Congressional Plan.** The enjoined Congressional plan contained five effective opportunity districts for Black voters: enjoined Congressional Districts 2, 4, 5, 7, and 13. *Id*. at 4. The proposed Congressional Plan only has four districts

effective for Black voters: enjoined Congressional Districts 2, 4, 6, and 13. *Id*. Congressional District 5 in the proposed plan remains a firmly Democrat-leaning district, but the proposed remedial plan *weakens* its electoral alignment for Black voters in primaries. Thus, it will be more difficult for Black-preferred candidates to secure a primary nomination, making this district no longer effective for Black voters. *Id*. The State has thus failed to add an *additional* Black opportunity district, as the Court Order required, instead proposing a map that includes one *fewer*, effective Black opportunity district.

**Proposed Senate Plan**. The enjoined Senate plan contained nineteen districts that were effective opportunity districts for Black voters. *Id*. at 4. The proposed Senate plan contains twenty effective opportunity districts for Black voters—an increase of one. *Id*. The only district that was not performing in the enjoined plan but is performing in the proposed plan is Senate District 38 (Senate District 6 in the enjoined plan). *Id*. And that district was already a "swing" district that had narrowly elected the candidate of choice of Black voters—Jason Esteves—in 2022. *Id*. Thus, the State has not drawn *two* additional, effective Black opportunity districts in the proposed remedial plan, as the Court Order required.

**Proposed House Plan**. The enjoined House plan contained sixty-nine districts effective for Black voters. *Id*. at 5. The proposed House plan contains only sixty-eight districts effective for Black voters, a decrease of one. *Id*. Two districts

that were not previously performing for Black voters—House District 149 (best aligned with House District 133 in the enjoined plan) and House District 145 are now effective for Black voters in the proposed plan. *Id*. However, three districts—House Districts 86, 105, and 108—were previously effective in the enjoined plan, but are no longer effective. *Id*. Thus, instead of creating *five additional* Black opportunity districts, the proposed map includes one *fewer* Black opportunity district. *Id*.

## II. The NAACP Plaintiffs Have Pending Claims Not Addressed by the Court Order or the Remedial Maps.

The NAACP Plaintiffs have pending statutory and constitutional challenges to Georgia's Congressional, Senate, and House maps that remain unchanged by the proposed remedial plans. *See e.g.*, *Georgia State Conference of the NAACP et al. v. State of Georgia*, 1:21-CV-5338-ELB-SCJ-SDG). These challenges include claims that: 1) Section 2 of the Voting Rights Act requires drawing an additional majority-Black Senate district in and around Gwinnett and an additional majority-Black Senate district in and around the East Black Belt; 2) Section 2 of the Voting Rights Act requires drawing an additional majority-Black house district in Southwest Atlanta and an additional majority-Black and Hispanic district in Southeast Georgia; and 3) Certain districts, including Senate Districts 1, 2, 4, 17 (now numbered as Senate District 42), and 26; and House Districts 44, 48, 49, 52, and 104 are racially gerrymandered and the product of intentional discrimination. *See* Joint Proposed

Pretrial Order, No. 21-53338, ECF No. 194, at 17-18, 20-22. The NAACP Plaintiffs reserve their rights to continue to press these claims if the 2021 enacted maps are reinstated or to press new claims by way of amendment of their complaint or by the filing of a new complaint if either the State's remedial maps are adopted by the Court or if the remedial maps adopted by the Court do not satisfy the vote dilution or racial gerrymandering identified by the NAACP Plaintiffs' allegations.[2]

## CONCLUSION

For the foregoing reasons, Amici urge the Court to reject the proposed remedial plans and to appoint a special master to draw new plans and accept public comment.

Dated: December 12, 2023

Respectfully submitted,

By: /s/ Kurt Kastorf
**Georgia Bar No. 315315**

**KASTORF LAW LLP**
1387 Iverson St., Suite 100
Atlanta, GA 30307
(404) 900-0030
kurt@kastorflaw.com

Jon Greenbaum*
Ezra D. Rosenberg*
Julie M. Houk*

---

[2] The Common Cause Plaintiffs likewise reserve their rights to continue to press their claims, amend them, or press new claims based on the maps that are approved during these remedial proceedings.

David Rollins-Boyd*
Alexander S. Davis*
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
drollins-boyd@lawyerscommittee.org
adavis@lawyerscommittee.org

**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW**
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857
*Counsel for NAACP Plaintiffs*


Keith Harrison*
Toni Michelle Jackson*
Astor H.L. Heaven*
kharrison@crowell.com
tjackson@crowell.com
aheaven@crowell.com

**CROWELL & MORING LLP**
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone: (202) 624-2500
*Counsel for NAACP Plaintiffs*

By: /S/ Jack Genberg
Bradley E. Heard (Ga. Bar 342209)
Jack Genberg (Ga. Bar 144076)
Courtney O'Donnell (Ga. Bar 164720)

**SOUTHERN POVERTY LAW CENTER**
150 E Ponce de Leon Ave, Suite 340
Decatur, GA 30030
Telephone: (404) 521-6700

Facsimile: (404) 221-5857
bradley.heard@splcenter.org
jack.genberg@splcenter.org
courtney.odonnell@splcenter.org
*Counsel for Common Cause Plaintiffs*

Cassandra Nicole Love-Olivo*
Nathan Jamieson*

**DECHERT LLP**
633 West 5th Street, Suite 4900
Los Angeles, CA 90071-2032
Telephone: (213) 808-5700
Facsimile: (213) 808-5760
cassandra.love@dechert.com
nathan.jamieson@dechert.com
*Counsel for Common Cause Plaintiffs*

Neil Steiner*

**DECHERT LLP**
Three Bryant Park,
1095 Avenue of the Americas
New York, NY 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
neil.steiner@dechert.com
*Counsel for Common Cause Plaintiffs*


*Admitted *Pro Hac Vice*